MARK J. RICE (SBN 124934)
McNEIL, SILVEIRA, RICE & WILEY
55 Professional Center Parkway, Suite A
San Rafael, CA 94903
Tel: (415) 472-3434
Fax: (415) 472-1298
markjrice@msrwlaw.com

Attorneys for Defendants
FOUNDATION CONSTRUCTORS, INC. and
FOUNDATION PILE, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| STEVE NEVILLE, SUBSTRUCTURE SUPPORT, INC., and TDP SUPPORT, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> FOUNDATION CONSTRUCTORS, INC. and FOUNDATION PILE, INC. <br><br> Defendants. | Case No.  5:17-cv-02507-AG (AGRx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES BY DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.** <br><br> **Date:   August 19, 2019** <br> **Time:   10:00 a.m.** <br> **Courtroom:  10D** <br><br> **Hon. Andrew J. Guilford** <br> **Trial Date:  October 1, 2019** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                       ii-iii

I.    FACTUAL BACKGROUND                                                   2

II.   LEGAL ARGUMENT                                                       7

      A.    The Claim is Barred Under 35 USC 102 –
            The On-Bar Sale Rule                                           7

      B.    There is Estoppel and Abandonment on These Facts              8

      C.    Invalidity Is Shown – This is Old News and Prior Art          12

      D.    Lack of Infringement                                          18

      E.    The 6-year Time Bar On Damages – The Pile Tip                 20

      F.    There is No Viable Lost Profits Claim                         21

            1.    The Licensure Suspensions And Sham RMO

                  Preclude Lost Profits                                   23

III.  CONCLUSION                                                          25

i

# TABLE OF AUTHORITIES

*Akeso Health Sciences, LLC v. Designs for Health, Inc.*,
April 18, 2018, CV-16 07749 SJO ............................................................... 10

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
605 F.3d 1305, 1310 (Fed. Cir. 2010) ......................................................... 10

*Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 385 ............ 24

*Crawford v. Heysinger,* 123 U.S. 589, 602-04, 8 S.Ct 399,
31 L.Ed. 269 (1887) ..................................................................................... 16

*Finistar Corp. v. DirectTV Group, Inc.,*
523 F3rd 1323, 1334 (Fed. Cir. 2008) ....................................................... 3, 7

*Georgia-Pacific Corp. v. Unites States Plywood Corp.,*
318 F. Supp. 1116, (SDNY, 1970) mod. And aff'd, 446 F.2d 295
(2nd Cir. 1971), cert. den ............................................................................ 20

*cf. Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct.684,
15 L.Ed.2d 545 (1966) ................................................................................ 16

*Goodyear Dental Vulcanite Co. v. Davis,* 102 U.S. 222, 227,
26 L.Ed. 149 (1880) ..................................................................................... 16

*Helsinn HealthCare, S.A. v. Teva Pharmaceuticals,* 586 US (2019) ......... 3, 7

*Hemstreet v. Computer Entry Sys. Corp.*,
972 F.2d 1290, 1295 (Fed. Cir. 1992) ......................................................... 10

*High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330
(Fed. Cir. 2016) (citing *Aukerman*, 960 F.2d at 1042) .............................. 10

*Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 521 ... 24

*Lucent Technologies, Inc. v. Gateway, Inc.,*
580 F.3d. 1301, 1333 (Fed. Cir. Sept. 2009 .............................................. 22

*Meyers v. Asics Corp.*, 974 F.2d 1304, 1309 (Fed. Cir. 1992) ................... 10

*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*,
(2005) 36 Cal 4th 412 ........ 24

*Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67 (1998) ........ 8

*Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013) ........ 10, 11

*Schriber-Schroth Co. v. Cleveland Trust Co.,* 311 U.S. 211, 220-21,
61 S.Ct. 235, 85 L.Ed. 132 (1940) ........ 16

B&P Code Section 7031 ........ 22

B&P Code Section 7125.2 ........ 23, 24

35 USC 102 ........ 1, 3, 7

35 USC 103(a) ........ 15

35 USC 112 ........ 15

35 USC 286 ........ 1, 21

ii

This is a patent infringement case involving pile tips for installation of deep foundation piling on construction projects, and depicted in allowed patent '236, and continuation patents '708 and '362. For the reasons below, Defendants FOUNDATION CONSTRUCTORS, INC. ("FCI") and FOUNDATION PILE, INC. ("FPI") ("Foundation") motion should be granted and the case dismissed.

One, under 35 USC 102, the subject pile tips went into commercial, non-experimental use more than one year before the March 2, 2005 provisional patent application. Undisputed Material Facts (UMF), 1-11.

As to one accused product, called EDTTEX 1 or the "Chinese Tip", the case is barred by the 6-year statute of limitation for damages, save for 40 tips involving a gross sale amount of $8404 ($221 per tip) such that the case is deminimus. UMF at Issue 3, 35 USC 286, 6-year time bar.

Further, the evidence shows that the subject patents are invalid as the pile tips are no different than, or obvious from prior art. The pile tips by Foundation Constructors, Inc. (FCI), do not infringe, and are substantially different than the Plaintiff's patented pile tips. Perko Dec., Williams Dec., Durnal Dec.

Estoppel also applies, as a "Cease and Desist" letter was written by Plaintiff's patent attorney August 12, 2009, at a time when the patent application had been repeatedly rejected as not novel and obvious as against prior art. The responded to promptly by FCI's counsel on August 28, 2009 pointing out that patent claim history status and denying any infringement. Nothing further happened for over 8 years until

1
DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
5:17-cv-02507-AG-AGRx

this suit was filed December 18, 2017. The claim was abandoned. UMFs 12 – 23, Rice Dec., Ex.'s 13, 14.

Finally, Plaintiff in discovery claimed that lost profits rather than a royalty rate is the appropriate measure of damages, but did not have a damage expert, and evidence has shown its "but for" lost profits claims are without merit. Durnal Dec., Williams Dec.

Diagrams of the three pile tips at issue are included for convenience in the body of this brief, below: the '236 patent pile tip claimed by Plaintiff; the EDTTEX 1 or Chinese Tip discontinued by FCI; and EDTTEX 3 patented by FCI and claimed as infringing by Plaintiff.

## I.     FACTUAL BACKGROUND

In 2002, a piling company called American Pile Driving, Inc., founded by engineer Byrl Williams, was performing an alternative pile project for a condominium development called Playa Vista. An in-house engineer at Playa Vista, Steve Neville, asked Williams for an opportunity to see American's operations, and Mr. Williams arranged it. Seeing an opportunity, Mr. Neville decided to leave his desk job and go into the alternative, non-driven pile business himself, in 2003, under a company called Neville Brothers Construction.

On a 2003 Project at the Benchmark warehouse in Culver City, Mr. Neville after testing various pile tips for this alternative, "screw pile" technology, obtained an October 2, 2003 approval from the City of Los Angeles. See Undisputed Material

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Facts (UMF) 1-11 and Rice Dec. ¶¶5, 6, 7, Depo. Ex. 105. Thereafter, in October through December 2003, 80 production piles supporting the Benchmark facility were installed, using the pile tip shown in the diagrams provided by Neville to the City of Los Angeles, and attached to the City's pile design approval October 2, 2003. Id. This was commercial sale of the now patented pile tip, 16 months before the provisional patent application of March 2, 2005.

As both obvious and admitted in deposition by Mr. Neville, The diagrams he gave to the City of Los Angeles and attached to its October 2, 2003 approval letter, he used again in his provisional patent application of March 2, 2005, that later became the '236 patent. The 80 Benchmark project piles were not experimental but paid for commercial use, installed in 2003. This means the on-sale bar applies under 35 USC 102 to bar this claim and patent. See *Finistar Corp. v. DirectTV Group, Inc.,* 523 F3rd 1323, 1334 (Fed. Cir.2008). See also, *Helsinn HealthCare, S.A. v. Teva Pharmaceuticals,* 586 US __ (2019) (17-1229, sip. Op.).

During the patent claim history, and previously covered in the Claim Construction Briefing in this case, the '236 patent application was repeatedly rejected as obvious against prior art and indefinite. This only changed when Plaintiff's restricted its patent claims by describing the end plate as a substantially flat end plate, in claims 1, 19, 29, 32 and 33 as "an end plate, having a substantially flat surface…" ("flat end plate" for convenience herein). However, the use of a flat end plate on the bottom of a screw pile is very old technology, back to Moseley, US,

1870, '814 and cited in the patent itself as prior art. See Rice Dec., Ex's 29, 30 from the patent claim history.

That patent claim history reflects the "substantially flat end plate" claim as not just an embodiment but a limitation. Still, not just Mosley, the first US patent for a screw pile (1870), has a flat plate, a tapered section and helical flights, but later prior art such as Stawbag also have these features:



FCI's pile tips EDTTEX 2, 2M and 3 are all conical in shape with spiraling helicals, and no tapered section, unlike the '236 patent by Plaintiffs. There are not close to the same. See Williams, Perko Declarations.

While Neville's patent application was pending but repeatedly rejected as indefinite and obvious, his patent counsel Gabriel Fitch wrote a Cease & Desist letter to FCI August 9, 2009. Rice Dec., Ex. 13. The letter contended that the pile tip made

for Foundation by Hammer & Steel, from a Chinese manufacture was infringing on the expected but not yet allowed '236 patent. The same company, Hammer & Steel, and same salesman, Daraius Tata, had taken in both orders and was having the overseas Chinese manufacture also making Neville's pile tips. Tata testified that he considered the two tips to be very different and would not have placed the later FCI order had he thought it infringed on Neville's cheaper and different tip. Tata Depo, at Rice Dec, Ex. 8. In 2008-9, FCI had ordered 1000 of its pile tips EDTTEX 1 shown on Ex. A, from Hammer & Steel, at a price of $221 per pile tip. Id. See also Williams Dec., ¶11.

FCI responded by its corporate counsel Mark Rice by letter dated August 28, 2009, denying that the patent pending was valid, and denying any infringement. Due to the EDTTEX 1 tips not performing well, and given that FCI was exploring a stepped, conical tip design that became patented EDTTEX 2 and 3, FCI discontinued and did not order any more EDTTEX 1 pile tips. Rice Dec., Ex. 14.

Eventually, the 1000 tip stock ran out, with only 40 of those tips being installed within 6 years of this suit. Williams Dec., ¶11. Plaintiffs never acted further to enforce its claimed patent rights, not after the patent was issued in 2011, or for 8 plus years until filing this suit December 18, 2017. The claim was abandoned.

During the course of discovery, the Plaintiffs recognized that the adapter bracket claim of infringement was time barred and it is not part of Plaintiff's final patent validity claims being asserted against FCI. FCI uses a very different system.

At the outset of this case, the focus of the infringement claim over the pile tip was the 1000 EDTTEX 1 or Chinese tips made by Hammer & Steel for Foundation. Extensive, archival discovery was done in cooperative fashion to establish that a) only 1000 tips were ordered, that first order 2008-9; b) all but 40 of those 1000 were used within 6 years of suit. At that point, FCI again asked for dismissal of the suit or a nominal resolution since at $221 per tip, or $8404 for 40 tips within the statute of limitation, the prospective range of royalty rate was between in FCI's view, less than $1600 or $40 per pile tip. Williams Dec., ¶11.

Instead, Plaintiffs alleged over $6 Million in lost profits, and by letter March 29, 2019 indicated that Plaintiff was now taking the position that FCI's later tips EDTTEX 2M and 3 – subject of allowed patents to FCI – are infringing.

Without a damage expert, Plaintiff after depositions dropped 4 of 12 of the Lost Profits jobs from its claim, also on March 29, 2019. The evidence of lost profits on a "but for" or *Georgia Pacific* basis, was debunked in discovery and in FCI's experts' opinions. See Williams, Durnal, and Berrigan Declarations.

The evidence first showed that SSI "struggling financially" as admitted by Neville in deposition and found by the Alameda Superior Court's Statement of Decision. The evidence showed that from day one of its licensure, May 12, 2006 to May 15, 2012, SSI's Responsible Managing Officer Terry Cowhey had no job duties and therefore was a sham, making SSI unlicensed and guilty of a misdemeanor and unclean hands. SSI's contractor's license was repeatedly suspended or expired,

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
5:17-cv-02507-AG-AGRx

which by California law precluded it from executing contracts or seeking compensation, for the very same lost profit jobs.

On a line item basis, the 8 jobs in question show SSI did not get the work for reasons unrelated to this patent dispute or the pile tips. The tips comprise about .3% of the total job cost – the other factors and mainly crew and equipment carry the day. See Williams Dec. on those 8 jobs, once they were examined, SSI dropped out early before the final round of bidding, did not use the required bid form, did not bid to the specification (wrong pile), was told by the General Contractor is was not permitted to bid, or admitted it did not have the right low headroom and tight access equipment to do the work. For these reasons, if the court denies the motion for summary judgment, it is requested that no lost profits damages be allowed, for lack of causation, lack of licensure, unclean hands, and lack of merit.

## II.    LEGAL ARGUMENT

### A.    The Claim is Barred under 35 USC 102 – the On-Bar Sale Rule.

Under 35 USC 102 Plaintiff's admitted, prior commercial use in 2003 at the Benchmark facility in Culver City "anticipates" the patent and invalidates it. See *Finistar Corp. v. DirectTV Group, Inc.,* 523 F3rd 1323, 1334 (Fed. Cir.2008). See also, *Helsinn HealthCare, S.A. v. Teva Pharmaceuticals,* 586 US (2019) a unanimous decision: "More than 20 years ago, this Court determined that an invention was "on sale" within the meaning of an earlier version of § 102(a) when it

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

was "the subject of a commercial offer for sale" and "ready for patenting." *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67 (1998)."

The 2003 commercial sale at Benchmark of 80 production piles was based on diagrams prepared by Neville and given to the City of Los Angeles. Those *exact same diagrams*, Neville then included in his later, March 2, 2005 provisional patent application that became the '236 patent.  of the same piles was approved on the *same diagrams* in the later patents. Following the Benchmark job in 2003, those exact same diagrams were provided by Plaintiff to Hammer & Steel to manufacture the same pile tips for the next job. These facts end this case.

Plaintiffs have argued in meet and confer that Neville continued to be in an experimental phase after the Benchmark phase. That is false. The evidence shows that the same pile tip design and actual manufacture continues on that same set of 2003 design diagrams given first to the City of Los Angeles for the Benchmark job approval, then to Hammer & Steel to manufacture, and then included in all three patents-in-suit ('236, '708 and '362). While further test programs took place, that is standard on any job and not evidence of experimentation. At most, it was marketing by Neville to attract other public agencies to approve the pile already approved by Los Angeles on the Benchmark job. See Williams Dec. para. 10.

## B.     There is Estoppel and Abandonment on these Facts.

Estoppel applies due to the long 8.4-year delay between the Cease & Desist Order and this suit. Plaintiff clearly filed suit as an afterthought and freebie to their

patent infringement suit filed against Magco over the M Pile patent he has, as a way to leverage negotiations heading into the Magco-Neville Alameda County trial.[1] Fitch wanted a response to his August 12, 2009 C&D letter by August 26, 2009. Rice Dec., Ex. 13. In the August 28 response, Rice noted that Neville's patent application had been repeatedly rejected, that it was invalid, that FCI's Chinese tip did not infringe, and called out that Neville's website had FCI and American Piledriving operations on its video feeds, as if his own, and demanded a C&D back, threatening:

> In conclusion, Foundation is ready to litigate this matter with your client and end his charade that based upon asserting sole ownership of torque down pile technology. Foundation believes that they will recover substantial damages and obtain an injunction unless your client complies with the above. Please confirm your clients' intentions immediately.

Rice Dec., Ex. 14. Neville backed off and did nothing, other than remove FCI material eventually from his website. This case is ripe for a finding of abandonment based on estoppel due to delayed action, lulling FCI by long silence into believing the issue was moot and over. FCI moved on to other tips, and Neville did not object to those patents, nor claim they infringed in this case until last month, 15 months after a December 18, 2017 filing, and only after realizing the 6-year time bar turned the Chinese tip infringement claim into nothing.

---

[1] In that case, while the jury sided with Magco that net-net he was owed $250,000 by Neville for unreimbursed project cash advances and equipment usage, the judge found their "back of the napkin" sale of the Neville patents to not have reached a meeting of the minds, though Magco had paid for $58,000 of the patent attorney's fees (making that a further credit against judgment only). FCI ordered the M Pile on one job, Genentech, Neville then added FCI to that case, and Magco is defending FCI there based on the purchase order indemnification duty.

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
5:17-cv-02507-AG-AGRx

On similar facts, this court, Judge Otero in *Akeso Health Sciences, LLC v. Designs for Health, Inc.*, April 18, 2018, CV-16-07749 SJO, granted summary judgment, with these applicable facts and legal grounds on all fours here:

"Three elements are required for equitable estoppel to bar a patentee's suit: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013). "Misleading conduct occurs when the alleged infringer is aware of the patentee or its patents and knows or can reasonably infer that the patentee has known of the allegedly infringing activities for some time." *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016) (citing *Aukerman*, 960 F.2d at 1042). Equitable estoppel "applies to successors-in-interest where privity has been established." *Radio Sys.*, 709 F.3d at 1131…

For silence to be misleading, it "must be accompanied by some *other* factor which indicates that the silence was sufficiently misleading as to amount to bad faith." *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1295 (Fed. Cir. 1992) (emphasis in original). "In the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate or vigorous enforcement of its patent right but then did nothing for an unreasonably long time." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1309 (Fed. Cir. 1992) (citations and quotations omitted). "In deciding whether to bar the suit on estoppel grounds, the court must consider all evidence relevant to the equities." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010)…

In *Aspex*, the plaintiff sent the defendant two separate cease-and-desist letters in which it stated that "some of the products sold by you may be covered by the claims of the above mentioned patents" and asked the defendant "to immediately confirm for us that you have stopped selling any [products] in violation of our rights under the patent[s]." *Aspex*, 605 F.3d at 1308. In response to further communication from the plaintiff regarding the file history and specific infringement allegations of two of the three patents mentioned in the cease-and-desist letters, the defendant responded that it did not believe their products infringe any valid claims of the two patents. *Id.* At 1309. No further communication happened between the parties concerning the third patent until three years later. *Id.* The Federal Circuit upheld the district court's finding of equitable estoppel, finding that the correspondence was reasonably viewed by the defendant "as a threat of an infringement suit" and thus the three ensuing years was an unreasonable delay in enforcement. *Id.* at 1311…

When DFH failed to meet its own extended deadline, Hendrix chose not to follow up on his threats. This decision could have been interpreted by DFH, after a reasonable period of time, as a relinquishment of Hendrix's infringement claims. This finding is further bolstered by the fact that the suit for infringement was delayed for over **ten** years. Under

35 U.S.C § 286, a patentee cannot recover for "any infringement committed more than six years prior to the filing of the complaint." Once six years had passed, the patentee would no longer have been able to recover for the allegedly infringing conduct that had occurred at the time the letter was issued. Given that there is nothing on the record that would support an inference by DFH that the delay was tactical in nature, *see Aukerman*, 960 F.2d at 1044 (finding that there was a question of fact as to whether the plaintiff failed to sue because the defendant had informed it that any potential recovery at that time would be *de minimis*), the patentee's failure to preserve over four years' worth of potential lost profits is reasonably interpreted as an abandonment of its claims. Thus, the Court finds that "the patentee, through misleading conduct (or silence), [led] the alleged infringer to reasonably infer that the patentee [did] not intend to enforce its patent against the alleged infringer[.]" *Radio Sys.*, 709 F.3d at 1130.

Here, years went by, FCI exhausted its scrap Chinese tips, and went on to better things and obtained two patents on its own pile tips. Williams Dec. Ex's 7,8, Rice Dec., Ex.'s 15-16. Neville knew FCI moved to the EDTTEX 2 and 3 tips and knew and viewed these as not infringing – his position until March 29, 2019. Rice Dec., 11.

Everyone had their favorite tip, and each is different. Neville knew when he lost a job to FCI what the specs said and what FCI was installing. On these facts, abandonment and estoppel apply. Id.

Simply, but for the fallout and litigation between Magco and Neville in Alameda County starting in 2013, this suit would never have been filed. It was an easy flyer and side car to the patent claim against Magco and M-Pile filed a week earlier, that was also filed mainly for leverage in the run up to the Alameda County jury trial in 2018 that Neville then lost. Estoppel clearly applies, for the same grounds and even better facts than in Judge Otero's Summary Judgment Order.

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
5:17-cv-02507-AG-AGRx

### C.    Invalidity is Shown – This is Old News and Prior Art.

The two patents-in-suit involve two claimed inventions – the Neville pile tip and an "adapter bracket" that is used to hoist the pile into place and connect the top of the pile to the pile rig's rotary motor that twists the pile into the ground. The adapter bracket claim has been withdrawn not as a patent but as a claim against FCI due to time bar. FCI uses a different hoisting and installation clamp method, in addition to using completely different tips from those used by Neville. Neville admitted in deposition that he was not claiming ED 2 and 3 to be infringing, but apparently is changing his mind. Rice Dec., Ex.11.

The '236 patented pile tip is not new, not novel and not inventive (non-obvious). See Expert Report of Perko who knows this patent corner more than anyone, having written the book on the subject of helical piles and collected all the prior art patents as part of that engineering treatise. Prior art since 1870 (Mosely) screw piles with flat end plates, tapers, teeth and/or helical flights exist. See Stawbag, 1995:

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Compare to the later Neville Patent '236, allowed in 2010 with similar taper, helicals, and flat plate:


[DIAGRAM ON NEXT PAGE]

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
5:17-cv-02507-AG-AGRx

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16
17
18
19
20
21
22
23
24
25
26
27
28

The patent claim history is very clear that absent the agreed limitation of a substantially flat end plate, the patent was going to continue to be rejected. Even that was a mistake as flat end plates have existed since Mosely in 1870; helicals are not new, nor are the tapered section, nor a flat end plate. The combination of elements is not new, and largely old technology dusted off. See Perko and Williams Dec's.

The original patent application had 17 claims. The examiner rejected all 17 claims of the patent application on April 3, 2008 for both indefiniteness as to the description of the "end plate" shape as a "end cap", and related to the end plate and

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

cutter teeth definitions and claims, for obviousness in view of prior art Saeki (US 6394704) and Moseley (US 108814, 1870):

> "Claim 14 is rejected under 35 USC 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.
>
> Claim 14 calls for "an end cap"; however, this appears to be the same as "end plate" called for in claim 1, making claim 14 indefinite."  Examiner's rejection letter dated April 3, 2008, see Certified Claims History on File with the Court.

To overcome that rejection, and several others, Neville introduced the "substantially flat end plate" as a limitation, not an embodiment, to thread the needle around prior art. In response to rejection of claim 17, for obviousness, Neville as applicant asserted in response dated 9/15/2008 that the flat surface description distinguished the invention being claimed from prior art Simanjunak (US 4,813,816), and *quoting and underlining* the claim language, "wherein the pile tip is substantially flat and free of protrusions extending outwardly therefrom" as making the invention patentable. This highlight by the claimed inventor is a significant statement of intent that *the end plate is flat*.

This back and forth went on for over a year. At the same time, on November 24, 2009 the examiner for the fourth time rejected the patent application for obviousness: "Claims 1,2,5,6,7-10,15,18,21-23, 26, 27, 29 are rejected under 35 USC 103(a) as being unpatentable over Pierce (US 204246) in view of Moseley (US 108814)." [Moseley is 1870] In the rejection, the examiner specifically called out

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

that it would have been obvious to have a conically shaped tip following two cylindrical or tubular pile sections based on prior patents Pierce and Moseley.

Significantly, the response by the applicant's attorney Gabriel Fitch dated December 18, 2009 to the initial rejection, points out the *flat* end plate language again in claims 18, 19 and 20 as the key factor for overcoming the examiner's claim rejection that an element was omitted:

> "Further, claims 19 and 20 depend from claim 18, which recites, "…an end plate disposed at the second pile tip end, the end plate having *a substantially flat surface* disposed *perpendicular* to the centerline of the tubular pile". Applicant therefore submits that the *end plate* is not omitted from claims 19 and 20." Fitch letter to Examiner, December 18, 2009, (italics added for emphasis).

See Ex.'s 29, 30. The doctrine of prosecution disclaimer precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution. *See Schriber-Schroth Co. v. Cleveland Trust Co.,* 311 U.S. 211, 220-21, 61 S.Ct. 235, 85 L.Ed. 132 (1940) ("It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected, and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent."); *Crawford v. Heysinger,* 123 U.S. 589, 602-04, 8 S.Ct 399, 31 L.Ed. 269 (1887); *Goodyear Dental Vulcanite Co. v. Davis,* 102 U.S. 222, 227, 26 L.Ed. 149 (1880); *cf. Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct.684, 15 L.Ed.2d 545 (1966) (ruling, in addressing the invalidity of the patents in suit, that "claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the

prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent").

Essentially, to get a patent allowed at all, Neville had to cling to the "flat plate" and cancel broader conical language.  However, both Moseley and Stawbag have a flat plate, helicals and tapered sections before the round or tubular pile.

As explained below, since the "flat end plate" is a limitation, it also means the FCI pile tips cannot infringe. They do not have a flat end plate on a taper. EDTTEX 2 M and 3 are cylindrical and have no flat plate. EDTTEX 1, the Chinese tips that are all but time barred, is a conical cast tip that is then cut off with a smaller tubular section added on to it – also very different, and not with a flat end plate.

See Howard Perko Expert Report attached to his declaration – Perko wrote the book Helical Piles:

> Foundation pile tips ED2 and ED3 consist of a stepped tapered spiral of varying geometry. A spade, tooth, fish-tale, or other protrusion can be attached to the conical nose of the drill tips depending on ground conditions.  It is my opinion that these pile tips are similar in appearance and function to the prior art of U.S. Patent 4,623,025 with some important differences and improvements.  Instead of a fixed protruding nose and set of spiraling helical blades arranged along the surface of a frustro-conical section as taught in 4,623,025, the ED2 and ED3 have interchangeable nose and a stepped spiral outer shape.  The novelty of these differences and improvements are easy to see and well documented in current US Patents 10,190,280 and 8,727,668.  In my opinion, pile tips ED2 and ED3 are completely different from the drawings, descriptions, or Claims found in US Patents 7,914,236 and 9,284,708.  The allegation of infringement is not close to plausible if one is familiar with the industry and prior art.

> Foundation pile tip ED1 consists of a funnel shape with two blades spiraling up the surface. The narrow end of the funnel terminates in a conical shaped spade point. There is a circular transition piece between the funnel and spade point that has been rounded or beveled by repeated weld passes.  Based on my background in deep foundations, study of prior art, and careful consideration, it is my opinion that the majority of claims in US Patents 7,914,236 and 9,284,708 regard obvious common foundation practice and prior art applied to a screw pile for which the only novel component arguably seems to be a substantially

flat plate at the termination of the pile tip.  Since Foundation pile tip ED1 can be constructed entirely from various components of prior art and it terminates in a spade point rather than a flat plate, I opine this tip also does not infringe on the subject patents.

## D.    Lack of Infringement

See above Perko Opinion. Here is the FCI EDTEXX 1 tip and its different shape. Even the manufacture Hammer & Steel who arranged for the manufacture of both parties' tips testified they are different and he would not have manufactured them had he thought one infringed on the other (Neville never mentioned he was seeking a patent). Here is the FCI EDTTEX 1 or Chinese Tip:





DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT



The EDTTEX 1 order was discontinued in 2009, with no further ordered after a Cease and Desist letter from Neville's counsel, disputed by FCI counsel while the patent was rejected, and concurrent with performance problems encountered in load testing of FCI's tips. The tips had no taper, but a cone, or conical section, with a further round section before the end plate, and no cutting teeth.

FCI then got its own patents on a different approach, the stepped tip or wedding cake tips that looks like this, known as EDTTEX 3:



**FIG. 14**

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Rice Dec., Ex's 15, 16; Williams Dec., Ex.'s 6,7. Keeping in mind that the patent examiner required the "substantially flat end plate" as a limitation to the '236 patent to avoid rejection for obviousness, the above EDTEXX 2 and 3 is not close to a Neville patented tip. Rice Dec., Ex.'s 2, 29, 30. EDTTEX 2 and 3 have no flat plate and no taper but a spiral cylindrical cone. It has no taper. It has no cutting teeth. It is conical in shape, not tapered. Instead of two helicals (Neville's patent), that do not run the length of a tapered section, the FCI EDTTEX 2M and 3 stepped or wedding cake tip, has a single spiral that has a fin like helical, and is continuous. See Williams and Perko Declarations.

The claims in '236 and '708 require a substantially flat end plate, and a gradual tapered section between the end plate and the tubular pile. Rice, Ex. 2. None of FCI's pile tips are configured that way.

Neville's patented tips mimic prior art and are obvious and invalid, and the '236 patent's adding of the flat plate language in claims 1, 18, 19, 29, 32 and 33 in order to be allowed at all does not change that. But once the "flat end plate" language was required by the examiner, it also ensured that only a similar shaped pile tip with an elongated taper would potentially infringe. A rounded conical tip with spiraled stepped flights as is FCI's pile tips, is well afield from the Neville patents.

**E.     The 6-year Time Bar on Damages – The Pile Tip.**

After December 18, 2011, or within six years before suit, only 40 piles were installed using Foundation's "Chinese" Pile tip, made for it by Hammer & Steel in

the 1000-pile tip order from 2008-9 before the patent was allowed in 2010.  7 of the 40 piles were installed in December 2011 on the City of Oakland, 12th Street and Lake Merritt project as a late requested owner change order, on a project that had in the specifications and contract, no closed ended screw piles or EDTTEX piles. 33 piles installed after December 18, 2011 at the City of Oakland 10th Street and Lake Merritt project were Chinese tips. Williams Dec., ¶11.

The rest of the 1000 pile tips used, consumed, were installed before that 6-year time bar, except 2-3 that remain as remnants in the yard and are sequestered from use given the lawsuit.  See Williams Dec., ¶11. 35 USC 286. Hence, the Plaintiffs' case at best, if the patents are found valid and EDTTEX 1 found to infringe, and no estoppel, is $40 per tip or less in royalty on 40 tips - $1600.

## F.    There is no Viable Lost Profits Claim.

The lost profits claim is without merit. *Georgia-Pacific Corp. v. Unites States Plywood Corp.,* 318 F. Supp. 1116, (SDNY, 1970) mod. And aff'd, 446 F.2d 295 (2nd Cir. 1971), cert. den. SSI was chronically unlicensed, its RMO a sham and therefore its existence illegal until May 15, 2012, and it was struggling financially. The 8 bids that SSI contends would have been accepted but for FCI's failure to pay a reasonable royalty on allegedly infringing tips, has been debunked in discovery. Since Plaintiff is claiming a component part of a service – a pile tip as part of a overall construction project, it must show the demand for the job and driver of the subcontract work is the pile tip. This it cannot do. See Williams Dec., ¶7, and Ex. 9

– crew, equipment, know how drive job estimating and performance. See *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d. 1301, 1333 (Fed. Cir. Sept. 2009). (component feature of Microsoft software, did not drive demand).

The Declarations of experts Williams and Durnal show, job by job, why the lost profits claim is frivolous. On only one of 8 jobs was SSI low and there it was only low because it forgot some things in its bid. On several, it did not use the required bid form. On some, such as SFO Terminal, it bid its 12.75" pile as an alternate whereas the job required 16" diameter steel piles.

On Santa Clara Family Justice, a job where SSI's bid did not use the required bid form, the prime contractor Hensel Phelps had told Neville SSI was not going to be considered to replace Magco (who had been fired). It was explained that this was owing to the "mess" underway between Neville and Magco that started on another Hensel Phelps project, a legitimate business reason unrelated to pile tips and this dispute.

On the two Saint Bernadine Medical Center projects, Neville admitted in deposition he did not have the low headroom and tight access equipment that the owner wanted, and which FCI did have. Here is a summary of Daniel Zepeda, the project engineer's, interview on St. Bernadine:

> *Planning for the retrofit started in 2010 and both Torque Down pes (Substructure Support, Inc) and EDTTEX (FCI) piles were considered.  SSI assured DE they could do the job and was selected as the contractor of choice.   The design was completed using their piles.  Prior to a request for proposal they were asked to do a site visit to verify site access, etc.  They informed Daniel/Degenkolb that they did not have the equipment to install the piles at one of the three work sites and withdrew from the project.  DE asked*

*FCI for a proposal for the work.  FCI was first given a testing contract.  Once the testing verified the EDTTEX pile was FCI was awarded the production contract.*  Williams Dec.

The 10th Street Lake Merritt project, involved $2.7 Million of piling work, including alternative, but also driven pile and shoring as the vast majority of the work Neville only bid the alternative and without every contacting the prime contractor Gordon Ball, and was not low for those items. See Gordon Ball's Hal Stober's email to Foundation, that says it all:

- **From:** Hal Stober <hstober@ballconco.com>
  **Sent:** Monday, May 6, 2019 3:11 PM
  **To:** Dermot Fallon <dfallon@foundationpile.com>
  **Cc:** Hal Stober <hstober@ballconco.com>; Fred Velasco <fvelasco@ballconco.com>
  **Subject:** RE: Oakland 10th Street Project
- 
- Hi Dermot –
- 
- We received one (1) other quote in addition to Foundation.  We received a quote from Substructure Support, Inc. for Item 78 and 79 only.
- 
- We did not consider using the quote of Substructure, as we did not intend to break out Items 78 and 79 separately.  Additionally, I recall that we were not comfortable with using them, as we had not discussed the project with them previously.

  The quote of Substructure was $466,370 – which was approximately $3,000 more than the quote of Foundation. (Williams and Durnal Dec.'s)

On all 8 projects, the reasons SSI did not get the work were due to factors <u>unrelated</u> to the tip or pricing relating to the pile tip. The pile tip is a very small portion of the overall project price, and does not drive the bidding or performance.

## 1.  <u>The Licensure Suspensions and Sham RMO preclude Lost Profits.</u>

Not having WC insurance but having employees, is a separate ground of automatic suspension under B&P Code Section 7125.2. See CSLB license certification, Ex. 3, and see Berrigan license expert report. Under B&P Code Section

7031, and case law, *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, (2005) 36 Cal 4th 412, 423, a contractor unlicensed for any part of the performance period of a project, is deemed unlicensed for the entire period and without legal right to seek compensation under any theory.

From 2006 to May 15, 2012, SSI admits its RMO Terrence Cowhey was a sham, and case law makes SSI also unlicensed during that period due to sham RMO. *Jeff Tracy, Inc. v. City of Pico Rivera* (2015) 240 Cal.App.4th 510, 521; *Buzgheia v. Leasco Sierra Grove* (1997) 60 Cal.App.4th 374, 385 ("The registrar and Leasco contend an attack on the bona fides of an RME is permissible under the statutes. The registrar emphasizes that "Evasion and deception in obtaining and maintaining a contractor's license in violation of the licensing law should not be sanctioned." We agree. It *is* possible for a party in a civil action to attack a contractor's license by going behind the face of the license and proving that a required RME is a "sham." See Berrigan Declaration (former CSLB Deputy Registrar). SSI was a sham from the get go; and got its license by fraud. See UMFs 43-48.

In effect, SSI was barely ever licensed between its sham RMO, it's not having workers compensation while having employees, and its multiple license suspensions during the performance periods of the subject 8 "lost profits" jobs. By law, SSI could not get paid for the work if it had been awarded the projects, due to lack of continuous licensure. Hence, it cannot seek those "profits" against FCI since SSI had no legal right to do the work. B&P Code Section 7031; Berrigan.

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

SSI kept no per job records to establish any track record of profitability and admitted it struggled financially – proven as well by its license suspension for not paying a $44,000 EDD employee withholding liability. See Berrigan Declaration.

In terms of "But for" causation, *if* FCI's tips infringe SSI cannot show that the incremental tip price or one tip or the other drove owner and prime contractor decisions, or drove FCI's estimates. *Lucent, supra.* FCI estimates were lower but involved many more factors, such as equipment, capital, crew and site conditions. Once the published bids were compared, not only was SSI not low, its bids were early, meaning they fell out of the running early. SSI usually bid its 12.75" diameter pile even where the specification called for a larger pile, making its bids non-responsive. It did not use the required bid forms. It did not bid the full piling scope. On Santa Clara Family Justice Center, SSI was told not to bid. On Saint Bernadine, it did not have the right equipment. Williams, Durnal Dec's.

### III. CONCLUSION

For the reasons stated, and on the evidence, the case should be dismissed.

Dated:  July 22, 2019

 Respectfully submitted,
MCNEIL, SILVEIRA, RICE & WILEY

By: /s/ Mark J. Rice
Attorneys for Defendants Foundation Constructors, Inc., and Foundation Pile, Inc

DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
5:17-cv-02507-AG-AGRx

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 22, 2019, pursuant to Federal Rules of Civil Procedure, and the prior agreement of the parties, a true and correct copy of the foregoing document described as   **DEFENDANTS FOUNDATION CONSTRUCTORS, INC. AND FOUNDATION PILE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE SUMMARY ADJUDICATION OF ISSUES** was served on the parties in this action by electronic mail addressed as follows: Joel A. Kauth, Esq., Mark Yeh, Esq., KPPB LLP, 2190 S. Towne Centre Place, Suite 300, Anaheim, CA 92806, <u>Joel.kauth@kppb.com</u> and <u>Mark.yeh@kppb.com</u>.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was signed on July 22, 2019, at San Rafael, California.


        /s/ Nina Vallindras
        Nina Vallindras