1   Joel A. Kauth, CA Bar No. 186544
    E-mail: joel.kauth@kppb.com
2   Mark Yeh, CA Bar No. 307181
    E-mail: mark.yeh@kppb.com
3   KPPB LLP
4   2190 S. Towne Centre Place, Suite 300
    Anaheim, CA 92806
5   PH:    (949) 852-0000
    Fax:   (949) 852-0004
6
7   Attorneys for Plaintiffs Steve Neville,
    Substructure Support, Inc., and
8   TDP Support, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    SOUTHERN DIVISION

12

13  STEVE NEVILLE, SUBSTRUCTURE        Case No. 5:17-cv-02507-AG (AGRx)

14  SUPPORT, INC., and TDP SUPPORT,    **PLAINTIFFS' STATEMENT OF
                                       GENUINE DISPUTES IN
15  INC.,                              SUPPORT OF ITS OPPOSITION
                                       TO DEFENDANTS' MOTION
16           Plaintiffs,               FOR SUMMARY JUDGMENT**

17        v.                           Hon. Andrew J. Guilford

18  FOUNDATION CONSTRUCTORS,
                                       RONALD REAGAN FEDERAL BUILDING
19  INC. and FOUNDATION PILE, INC.     AND UNITED STATES COURTHOUSE
                                       411 WEST 4TH STREET
20           Defendants.               SANTA ANA, CA 92701-4516

21
                                       Date: August 19, 2019
22                                     Time: 10:00 AM
                                       Place: Courtroom 10D
23

24

25

26

27

28

KPPB LLP

Plaintiffs STEVE NEVILLE ("Neville"), SUBSTRUCTURE SUPPORT, INC. ("Substructure"), and TDP SUPPORT, INC. ("TDP") (collectively, "Plaintiffs") hereby identify Plaintiffs' genuine disputes of material fact in support of their opposition to defendant FOUNDATION CONSTRUCTORS, INC.'S ("FCI") and FOUNDATION PILE, INC.'S ("FPI") (collectively, "Foundation" or "Defendants") Notice of Motion and Motion for Summary Judgment, or, in the Alternative, Summary Adjudication of Issues.  Dkt. Nos. 51 through 51-6, 52 through 52-4, and 57 through 57-27.

## Defendants' Material Facts

### Issue 1 – On Sale Bar Date

| Defendants' Material Fact | Plaintiffs' Response and Support |
| --- | --- |
| 1. Plaintiffs received a provisional patent date of March 2, 2005 for the '236 patent,<br>Supporting Evidence:<br>Declaration of Mark J. Rice ("Rice Decl.") ¶1, 2, 3, and Ex. 1, 2 U.S. Patent No. '236. | The '236 patent claims priority to provisional application No. 60/657,857, which has a filing date of March 2, 2005.<br>Support:<br>Dkt. No. 1-1 at 1. |
| Plaintiff Steve Neville admitted to driving more than 80 production piles plus indicator piles using the subject later patented pile tip under patent '236, on the Benchmark warehouse in Culver City between May-December 2003: | Steve Neville installed between 70 and 80 production piles for the Benchmark Builders project.<br>Support:<br>Dkt. No. 57-1 at 36-44 (45:9-53:23), 52-62 (Depo Exhibit 105), and 46-51 (Depo Exhibit 45); |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| plate?<br>Q: What was the size of that job, the number of piles for Benchmark?<br>A. Ultimately, I think it was, I'm going to say, between 70 and 80.<br>....<br>Q. So this is a letter, Exhibit 105, or a series of documents we obtained from the city files over at the City of Culver City, you know, department of Los Angeles, with respect to the Mesmer Avenue project, which was the Benchmark project. You recognize that as part of the Benchmark projects?<br>A. Yes.<br>Q. And this letter is dated October 2, 2003.<br>A. Yes.<br>Q. And you recall that the letter was part of approval of installation for production piling on that project, the 80 production piles, correct?<br>A. Yes.<br>Q. And those were paid for, to Substructure by Benchmark, correct?<br>A. Yes.<br>Steve Neville Deposition ("Neville | Yeh Decl., Exh. A, Neville Depo, Vol. 1, 54:5-8;<br>Yeh Decl., Exh. D, Neville Depo, Vol. 3, 533:8-534:12. |

| **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|
| Depo"), at 45:9-53:23, 54:5-8 and 533: 8- 524:12, and Depo Ex. 105, and 45. Mark J. Rice Declaration ("Rice Dec."), ¶ 4, Ex. 4. | |
| 2. On October 2, 2003, following testing of pile tips at the Benchmark facility project, Plaintiffs received approval for use of the pile tips for construction of the Benchmark facility from the City of Los Angeles. Supporting Evidence: Neville Depo at 48:14-49:20; 535:19-536:14, and 537:2-15 and Depo Exhibits 77 and 105 and Depo Exhibits 45 and 105. Rice Dec. ¶ 5, Ex. 5 | Steve Neville received approval for use of an experimental pile system (depicted in the Los Angeles Department of Building and Safety ("LADBS") letter) for construction of the Benchmark facility from the City of Los Angeles on October 2, 2003. Support: Dkt. No. 57-1 at 38-40 (47:20-49:20); 46-51. |
| 3. The City of Los Angeles' October 2, 2003 approval for use of the pile tips on the Benchmark project, included two diagrams of the pile tips drawn and provided by Plaintiff Neville to the City of Los Angeles, depicting the pile tips to be installed. Q. So this is a letter, Exhibit 105, or a series of documents we obtained from the city files over at the City of Culver City, you know, department of Los Angeles, with respect to the Mesmer | Support: Dkt. No. 57-1 at 52-62 (Depo Exhibit 105), 46-51 (Depo Exhibit 45). |

| | Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|---|
| 1 | | |
| 2 | Avenue project, which was the | |
| 3 | Benchmark project. You recognize that | |
| 4 | as part of the Benchmark project. | |
| 5 | A. Yes... | |
| 6 | Q. And the drawings were produced to | |
| 7 | me by the city -- or it was in their files. | |
| 8 | If you look at this shaded drawing here, | |
| 9 | do you recognize that drawing? | |
| 10 | A. I do recognize that drawing. | |
| 11 | Q. Okay. And by the way, this letter | |
| 12 | corresponds to the Exhibit 45; I just | |
| 13 | didn't previously have the -- you had | |
| 14 | produced the letter, but you didn't | |
| 15 | produce the drawings. And it was | |
| 16 | Exhibit 45. And let me see what I'm | |
| 17 | trying to find here. So is this a drawing | |
| 18 | that, to the best of your knowledge, | |
| 19 | Wesley Dial drew up? | |
| 20 | A. It is not. | |
| 21 | Q. Did you draw this letter up? | |
| 22 | A. I did. | |
| 23 | Supporting Evidence, | |
| 24 | Neville Depo at 533:88-534:12 and | |
| 25 | Depo Ex. 45 and 105 at Rice Dec., ¶ 4, | |
| 26 | Ex. 4. | |
| 27 | 4. The pile tip diagrams attached to the | The figures from the October 2, 2003 |
| 28 | October 2, 2003 City of Los Angeles | LADBS letter are similar to the figures |

| **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|
| letter approving the pile tips for use on the Benchmark project, are admitted by Neville to be identical to those he later filed with USPTO in his provisional patent application dated March 2, 2005. Supporting Evidence: Q: Was this a 12.75 inch pile? A. Yes. Q. It was close to what I ended up filing for the patent on what was ultimately used. Q. When you say "closed to it," it had a flat plate? A. Yes. Q. It had cutter teeth or teeth coming out of the bottom of the plate? A. Yes. Q. It had helicals around the tapered section below the tubular pile? A. So, as I mentioned, there was some variations of it initially. And we arrived at a configuration that was ultimately installed on the project. Q. I'm just trying to get this--so how many variations did you have on this project of the tip? A. That we actually tested? Or | submitted in the provisional application No. 60/657,857. Support: Dkt. No. 57-1, 48-50 (48:14-50:11); Dkt. No. 57-2 at 4-5 (535:19-536:14), 6 (537:2-15); 52-62 (Depo Exhibit 105), 46-51 (Depo Exhibit 45); Dkt. No. 57-2 at 18-55 (Depo Exhibit 77). |

| | **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|---|
| 1 | | |
| 2 | installed. | |
| 3 | Q. Let's just go with installed, then | |
| 4 | we'll do both. | |
| 5 | A. There was one variation that we | |
| 6 | installed ultimately. | |
| 7 | Q. What variation was installed? | |
| 8 | A. Basically what you described. | |
| 9 | Q. The one close to the -- | |
| 10 | A. Yes. | |
| 11 | Q. --one in the patent? | |
| 12 | A. Yes. That's correct. | |
| 13 | ... | |
| 14 | Q. Okay. And this is essentially the | |
| 15 | same drawing that is submitted with | |
| 16 | your initial patent application in March | |
| 17 | 2005? | |
| 18 | A. I'm not sure if it is exactly the same- | |
| 19 | - | |
| 20 | Q. Okay. | |
| 21 | A.--that I submitted in 2005. | |
| 22 | Q. Okay. And then this drawing --not | |
| 23 | the next page but the page afterwards. | |
| 24 | Let's see, several pages in. I'm sorry. | |
| 25 | Go towards this drawing that shows | |
| 26 | "conical pile tip shop drawing." That | |
| 27 | shows the side view. | |
| 28 | A. Yes... | |

| | **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|---|
| 1 | | |
| 2 | Q. Just bear with me. I've got too many | |
| 3 | of these. Now, I want you to compare - | |
| 4 | -this is the patent application I believe I | |
| 5 | asked you and Mr. Dial about. It was | |
| 6 | marked as -- well, it's marked Exhibit | |
| 7 | 77 to Mr. Dial. I'm not sure we got to | |
| 8 | it. This is Figure 4 in the original patent | |
| 9 | application. | |
| 10 | A. Okay. | |
| 11 | Q. Okay | |
| 12 | A. Sure enough. | |
| 13 | Q. Okay. So when I look at this, other | |
| 14 | than the words "Conical Pile Tip-Shop | |
| 15 | Drawing" and the architect's little | |
| 16 | insignia, I - - and you're adding | |
| 17 | numbers, the configuration and | |
| 18 | depiction of the actual shop drawing | |
| 19 | diagram of the pile tip is identical? | |
| 20 | A. Yes, I would agree. | |
| 21 | Q. And then it's identical to the shop | |
| 22 | drawing at Exhibit 105. And then let's | |
| 23 | go -- let's see. Okay, Exhibit 5. Let's | |
| 24 | compare Exhibit 5 within Exhibit -- | |
| 25 | Exhibit 5 --or diagram, Figure 5 in the | |
| 26 | patent, which is the deposition Exhibit | |
| 27 | 77, and compare that with hand-drawn | |
| 28 | drawing at Exhibit 105, submitted to | |

| | **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|---|
| 2 | the City of Los Angeles. Do you agree | |
| 3 | that--other than at the bottom here and | |
| 4 | the patent we have Figure number 5 | |
| 5 | and on the drawing to the city; it has | |
| 6 | conical pile tips and descriptions --that | |
| 7 | the diagram is the same diagram? | |
| 8 | A. I would agree. | |
| 9 | Q. Okay. And literally one is a copy of | |
| 10 | the other, correct? | |
| 11 | A. I think so. | |
| 12 | ... | |
| 13 | Q. Exhibit 105, which is what was | |
| 14 | submitted to the City of Los Angeles | |
| 15 | and for which they approved your use | |
| 16 | of this pile tip, when we look at the | |
| 17 | shaded hand-drawn drawing that you | |
| 18 | drew for the submission to the  City of | |
| 19 | Los Angeles as part of Exhibit 105, | |
| 20 | you've copied the same drawing and | |
| 21 | included it in the patent application as | |
| 22 | Figure 5, correct? | |
| 23 | Mr. Yeh: Objection. Asked and | |
| 24 | answered. You can answer | |
| 25 | A. Tell me what you're asking. Is it the | |
| 26 | same? | |
| 27 | Q. Is it the same? | |
| 28 | A. I would say they're virtually the | |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| same.<br>Neville Depo at p.48:14-49:20; 535:19-536:14, and 537:2-15 and Depo Exhibits 77 and 105 at Rice Dec., ¶ 5, Ex. 5. | |
| 5.  Plaintiffs admitted that they were paid by mid-December 2003 for installation of the 80 production piles and pile tips installed in and before December 2003 on that project.<br>Supporting Evidence:<br>Neville Depo at 533:17-20. Rice Dec.., ¶ 4, Ex. 4. | Steve Neville installed between 70 and 80 production piles for the Benchmark Builders project, for which they were paid.<br><br>Evidence does not support claimed date, and there is no page 533 of Neville transcript in Ex. 4.<br><br>Support:<br>Dkt. No. 57-1 at 36-44 (45:9-53:23), 52-62 (Depo Exhibit 105), and 46-51 (Depo Exhibit 45);<br>Yeh Decl., Exh. A, Neville Depo Vol. 1, 54:5-8;<br>Yeh Decl., Exh. B, Neville Depo, Vol. 3, 533:8-534:12. |
| 6. Plaintiff Steven Neville admitted that the August 1, 2003 shop drawing submitted to the City of Los Angeles for the Benchmark project was identical to the drawings on the 2005 | The figures from the October 2, 2003 LADBS letter are similar to the figures submitted in the provisional application No. 60/657,857.<br>Support: |

| | Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|---|
| 1 | | |
| 2 | patent application. | Dkt. No. 57-1 at 39-41 (48:14-50:11), |
| 3 | Q.  Now, I want you to compare --this | 52-62 (Depo Exhibit 105), and 46-51 |
| 4 | is the patent application I believe I | (Depo Exhibit 45); |
| 5 | asked you and Mr. Dial about. It was | Dkt. No. 57-2 at 4-5 (535:19-536:14), 6 |
| 6 | marked as --well, it's marked Exhibit | (537:2-15), 18-55 (Depo Exhibit 77). |
| 7 | 77 to Mr. Dial. I'm not sure we got to | |
| 8 | it. This is Figure 4 in the original patent | |
| 9 | application. | |
| 10 | A. Okay. | |
| 11 | Q. Okay. | |
| 12 | A. Sure enough. | |
| 13 | Q. Okay. So when I look at this, other | |
| 14 | than the words "Conical Pile Tip - | |
| 15 | Shop Drawing" and the architect's little | |
| 16 | insignia, I --and you're adding | |
| 17 | numbers, the configuration and | |
| 18 | depiction of the actual shop drawing | |
| 19 | diagram of the pile tip is identical? | |
| 20 | A. Yes, I would agree. | |
| 21 | Q.  And then it's identical to the shop | |
| 22 | drawing at Exhibit 105. And then let's | |
| 23 | go to --let's see. Okay, Exhibit 5. Let's | |
| 24 | compare Exhibit 5 within Exhibit -- | |
| 25 | Exhibit 5 - -or diagram, Figure 5 in the | |
| 26 | patent, which is the deposition Exhibit | |
| 27 | 77, and compare that with the hand- | |
| 28 | drawn drawing on Exhibit 105, | |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| submitted to the City of Los Angeles. Do you agree that -- other than at the bottom here and the patent we have Figure number 5 and on the drawing to the city; it has conical pile tips and descriptions - -that the diagram is the same diagram? A. I would agree. Q. Okay. And literally one is a copy of the other, correct. A. I think so. Supporting Evidence Rice Decl., ¶5, Ex. 5, Neville depo p. 534:10-535:11, Ex.45, 105. | |
| 7. Plaintiff Substructures Support, Inc.'s employee and Responsible Managing Officer ("RMO"), Wesley Dial, admitted that the pile tips later manufactured in 2004 by Hammer & Steel were substantially identical to those used on the Benchmark project: Q. Okay. Let's take a look at Exhibit 40. This was a drawing that Hammer & Steel produced. It's a two-page exhibit. I'm going to put a paper clip to reassemble it. Did you have a hand in | Wesley Dial stated that a drawing that was given to Hammer & Steel was similar to the pile tip used on the Benchmark Builders project. Support: Dkt. No. 57-3 at 5-6 (29:17-p.30:11), 17-18 (Depo Exhibit 40). |

| | **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|---|
| 2 | doing any of the drawings or any of the | |
| 3 | patents? | |
| 4 | A. No. | |
| 5 | Q. Do you recognize this drawing that | |
| 6 | was produced by Hammer & Steel? | |
| 7 | A. Yes. | |
| 8 | Q. Is that the manufactured pile tip? | |
| 9 | A. The one for? | |
| 10 | Q. For Fourth Street? | |
| 11 | A. Yes. | |
| 12 | Q. And that was based upon the | |
| 13 | successful tip used for the production | |
| 14 | piling at the Benchmark project. | |
| 15 | Correct? | |
| 16 | A. Yes. | |
| 17 | Q. And so it was similar in look? | |
| 18 | A. Yes. | |
| 19 | Dial depo at p.29:17-p.30:11 and Depo | |
| 20 | Exhibit 40, at Rice Dec., ¶7, and Ex. 7. | |
| 21 | 8. Plaintiff Steve Neville also admitted | Steve Neville agreed that pile tips used |
| 22 | that the pile tips later manufactured by | on the 555 Fourth Street project were |
| 23 | Hammer & Steel in 2004 were | "of the configuration that is depicted in |
| 24 | substantially the same as the pile tips | the patent application" and were "close |
| 25 | installed at the Benchmark project in | to what was used on the Benchmark |
| 26 | 2003. | project. |
| 27 | Q. Okay… tell me if you remember | Support: |
| 28 | seeing that report that's Exhibit 21 in | Yeh Decl., Exh. A, Neville Depo Vol |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| and around late June 2004?<br><br>A. Yes. I do.<br><br>Q. Okay. And so the pile tip that was used on the project was of the configuration that is depicted in the patent application?<br><br>A. Yes.<br><br>Q. And it's close to what was used on the Benchmark project?<br><br>A. It is close.<br><br>Supporting Evidence:<br><br>Neville Depo at 61: 10-24, at Rice Dec. ¶ 6. Ex. 6. | 1, 61:10-24; 63:9-64:15;<br><br>Yeh Decl., Exh. D, Tata Depo, Depo Exhibit 21;<br><br>Dkt. No. 57-2 at 18-55 (Depo Exhibit 77). |
| 9. The Pile Tips and piles for the installation of the foundation at the Benchmark Project in 2003 needed to comply with the shop drawings provided by Plaintiff Steve Neville in an August 1, 2003 report from Plaintiffs to the City of Los Angeles, which the City of Los Angeles approved by its October 2, 2003 letter.<br><br>Supporting Evidence:<br><br>Neville Depo, 533:8-16, and Depo Ex. 105, at Rice Dec, ¶ 4, and Ex.4; Byrl Williams Declaration, ¶10. | The production pile tips installed in the Benchmark Builders project complied with the drawings Steve Neville submitted in an August 1, 2003 letter to the City of Los Angeles (i.e., LADBS). Support:<br><br>Yeh Decl., Exh. B, Neville Depo, Vol. 3, 533:8-16;<br><br>Dkt. No. 57-1 at 52-62 (Depo Exhibit 105), and 46-51 (Depo Exhibit 45). |
| 10. The 80 production piles and pile | The installation of 70 to 80 production |

| **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|
| tips installed by Neville in 2003 at the Benchmark project, after City of Los Angeles's October 2, 2003 approval, was not experimental use but a commercial use and sale. Supporting Evidence: Neville Depo, 48:16-19 at Rice Dec, ¶ 4, and Ex.4; Neville Depo at 48:14-49:20; 535:19- 536:14, and 537:2-15 and Depo Exhibits 77 and 105 and Depo Exhibits 45 and 105, at Rice Dec. ¶ 5, Ex. 5 Byrl Williams Declaration, ¶10. | piles for the Benchmark Builders project was an experimental use. Support: Dkt. No. 57-1 at 38-44 (47:5-53:19), 52-62 (Depo Exhibit 105), and 46-51 (Depo Exhibit 45); Yeh Decl., Exh. A, Neville Depo, Vol. 1, 55:23-65:10, 87:1-16, Depo Exhibit 42, 46; Yeh Decl., Exh. D, Tata Depo, Depo Exhibit 8, 21; Yeh Decl., Exh. C, Dial Depo, 61:24-62:7; Neville Decl. ¶¶ 6-11; Neville Decl., Exh.'s A, B, C. |
| 11. Neville's later testing of the same-looking pile tip after having Hammer & Steel manufacture them, was to show public agencies their value, as marketing and did not involve new experimentation with the shape of the subject pile tip which remained the same; Plaintiffs have not modified their design and diagrams since the Benchmark project. Williams Dec., Ex. 10. | Denied.  Plaintiffs cannot tell what is specifically referenced by "Neville's later testing of the same-looking pile tip after having Hammer & Steel manufacture them." Plaintiffs experimented with multiple pile tip, adapter, and driver tool designs and continued to test said designs after the Benchmark Builders project.  The testing at Playa Vista and Fourth Street was not of tips manufactured by Hammer & Steel. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | Support: |
| | Dkt. No. 57-1 at 38-44 (47:5-53:19), 52-62 (Depo Exhibit 105), and 46-51 (Depo Exhibit 45); |
| | Yeh Decl., Exh. A, Neville Depo Vol 1, 55:23-65:10, 87:1-16, Depo Exhibit 42, 46; |
| | Yeh Decl., Exh. D, Tata Depo, Depo Exhibit 8, 21; |
| | Yeh Decl., Exh. C, Dial Depo, 61:24-62:7; |
| | Neville Decl. ¶¶ 6-28; |
| | Neville Decl., Exh.'s A, B, C. |

## Issue 2 – Estoppel

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 12. As of August 12, 2009, the patent examiner had rejected the patent application that later became the '236 patent, a total of three times, including final rejections, for either indefiniteness, lack of novelty, or obviousness, or both. Supporting Evidence: August 28, 2009 letter from Mark J. Rice, Esq. to Gabriel Fitch, Esq. at | Agree, however, rejections from the Patent Office are usually expected. Support: File History of Application No. 11/367,768, lodged with the Court in accordance with S.P.R. 3.5.3. |

| | Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|---|
| 1 | | |
| 2 | Rice Decl. ¶ 14, Ex. 14.__Patent | |
| 3 | Rejection letter, November 24, 2009, at | |
| 4 | Rice Dec. ¶29, and Ex. 29. | |
| 5 | See Patent Claim History filed with the | |
| 6 | Court. | |
| 7 | 13. On August 9, 2009, the patent | The letter was dated August 12, 2009. |
| 8 | attorney for Plaintiff Steve Neville, | The "Cease & Desist" portions were |
| 9 | Gabriel Fitch, wrote a Cease & Desist | regarding "making false |
| 10 | letter to Foundation Constructors, Inc. | representations concerning |
| 11 | with respect to pile tips Foundation was | Substructure pile products and from |
| 12 | also having manufactured by Hammer | using the term "Torque Down Pile." |
| 13 | & Steel. | Because no patent had issued at the |
| 14 | Supporting evidence: | time, there was no cease and desist |
| 15 | August 9, 2009 letter from Gabriel | portion regarding patent rights, but |
| 16 | Fitch, Esq. to Peter Brandl, Rice Dec. | instead "Substructure therefore |
| 17 | ¶13, Ex. 13. | requests that you stop making, using |
| 18 | | and selling these strikingly similar pile |
| 19 | | products." |
| 20 | | Support: |
| 21 | | Dkt. No. 57-10 at 2-3; |
| 22 | | Dkt. No. 57, ¶ 13 (Declaration of Mark |
| 23 | | Rice ("Rice Decl.")). |
| 24 | 14. In response to Gabriel Fitch's | Agree. |
| 25 | August 12, 2009 Cease & Desist letter | |
| 26 | to Foundation Constructors, Inc, its | |
| 27 | counsel Mark Rice wrote a response, | |
| 28 | dated August 28, 2009. | |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Supporting Evidence:<br>August 28, 2009 letter<br>Rice Dec., ¶14, Ex. 14. | |
| 15. As of the August 12, 2009 Fitch Cease & Desist letter to Foundation Constructors, in 2008 and 2009 Foundation had ordered 1000 of its pile tips from Hammer & Steel.<br>Q: Exhibit 19. I just made a group exhibit of Foundation's file that includes Hammer & Steel invoices for the 1,000 tips. And I probably have yours somewhere else. Primarily, I'm interested in the pricing and the quantity. Looking at the third page, there's a date, November 23, 2008. I can't quite read the invoice number, BPO 6-01680. It's Bates stamped Foundation0005. Do you recognize this as one of the invoices for the thousand tips?<br>A. It looks like it.<br>Q. And so unit price was $221, approximately?<br>A. Yes.<br>Supporting Evidence:<br>Tata Depo at 113:17-114:5, Depo | Agree. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Exhibit 19 at Rice Decl. ¶ 8, Ex. 8. | |
| 16. After receipt of the August 12, 2009 Fitch Cease & Desist letter, Foundation no longer ordered any further of the subject tips, known as EDTTEX-1 or "Chinese Tips" made further by anyone. | Agree based on documents Plaintiffs have seen to date that no further tips were ordered from Hammer & Steel; no evidence with respect to "made further by anyone." |
| Q. Okay. And then - - so that's 350 plus 150, that's 500. And then the last one is Bates stamped FCI-0011, and it's dated May 20th, 2009.  And again, the price is $221 per tip, and it adds up to the prior tips billed and paid on the prior invoices, and then it shows the quantity of 500 was shipped to Foundation. Do you recognize this invoice? | Evidentiary Support is incorrect, as Ex. 11 is not the Tata deposition. |
| A. Yes. | |
| Q. And so this is consistent with your recall of 1,000 tips? | |
| A. Correct | |
| Q. And those are the times when they were sold and delivered in 2008 in December, and then again May 2009. Correct. | |
| A. That would be the case. | |
| Supporting evidence: | |
| Tata Depo at p. 114:21-115:9, Rice | |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Decl. ¶ 11, Ex. 11 | |
| 17. In arranging for the manufacture of both the Neville pile tips starting in 2004 and the Foundation "Chinese tips" starting in 2008, Hammer & Steel's lead salesperson, Daraius Tata, did not believe tips were Foundation's Chinese tips infringed on any patent claim or application of Neville, and would not have taken the order from Foundation had he thought the Foundation tips were infringing on Neville's tips. | Dispute as to 2004 date. Although Daraius Tata believed defendants' pile tips and plaintiffs' pile tips looked different, he admits he was not a patent attorney and did not know if it violated the patent or not. He also admits that he did not read plaintiffs' patent. Support: |
| Q. And. I take it by your process in the order, you didn't think there was going to be any conflict between Mr. Neville's patent application, and became a patent, and what Foundation was asking you to manufacture? | Dkt. No. 57-4 at 5-6 (22:13-23:13); Yeh Decl., Exh. D, Tata Depo, 177:13-178:13. |
| A. I did not. | |
| Q. And why, if you can tell me, what specific about the two tips were, in your mind, different? | |
| A. Well, they looked different, There are a lot of companies that have full displacement piles. They all looked similar but different. I'm not a patent | |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| attorney, but to me, they looked different. And so I didn't know if it violated the patent or not. Q. But if you thought it did, you wouldn't have gone ahead and manufactured - - A. No. I probably would not have. Tata Depo 22:13-23:5, at Rice Dec. ¶ 8, and Ex.8. | |
| 18. Foundation did not receive another Cease & Desist letter, or other written demand from Plaintiffs, until being served with the within complaint filed December 18, 2017. Supporting Evidence: Rice Dec. ¶ 15. | Dispute. Yeh Decl., Exh. E, Oct. 1 email and regular mail. |
| 19. This Complaint against Foundation is filed one week after the same Plaintiffs here filed a companion patent infringement case against Magco, Neville's former Joint Venture partner, on December 12, 2011, before this court, entitled "Neville et al v. Aldridge, et al, USDC Central District, #Case No. 2:17-cv-08929-AG (AGRx). Request for Judicial Notice. | Plaintiffs filed two cases, this one and No. 2:17-cv-08929-AG (AGRx). |
| 20. At the time of the filing the patent | Agree.  Company name is Substructure |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| infringement suit against Magco and others on December 12, 2011 against Aldridge et al, Magco, its owners Mike and Holly Maggio, and Steve Neville and his company Substructures Support were involved in a dispute over their joint venture, pending in Alameda County Superior Court, Action No.RG13-687945 in which Mr. Neville testified that Substructures was struggling financially and which became part of the Court's Statement of Decision.<br>Supporting evidence:<br>Neville Depo 581:19 – 582:17, and depo Ex. 104, Rice Dec. ¶, 17. Ex. 17. | Support, Inc. |
| 21. Foundation Constructors' personnel applied for in 2011 an obtained in May, 2014 the EDTTEX 2 or "wedding cake" or "stepped" pile tip, patent **#8,727,668** issued May 20, 2014(Application 2/1/2012), and continuation patent **10,190,280,** issued January 29, 2019 (Application 5/20/14), to which Plaintiffs filed no opposition, and which correspond to Foundation's pile tips, EDTTEX 2 and EDTTEX 3. | Agree, regarding issuance of patentand purported coverage, except that Patent No. 10,190,280 is a continuation-in-part.<br>Support:<br>Dkt. No. 57-13 at 1.<br><br>In the United States, oppositions are trademark proceedings, so it is unclear what procedure Defendants are referring to.  Plaintiffs file no request |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Williams Dec., ¶¶ 6(B), 6(C), at p. 12-13; Rice Dec. ¶ 15, Ex. 15, 16. | for post-grant review.  Further question the evidentiary support by Mr. Williams as he was unable to discuss the patents at the Foundation 30(b)(6) deposition. |
| 22. The long, 8 plus year silence by Plaintiffs after the Fitch August 12, 2019 Cease & Desist demand, until filing this suit December 18, 2011, and given Foundation's response August 28, 2019, a reasonable person would conclude that Plaintiffs had abandoned their claim of infringement.<br>Rice Dec., ¶16, 15. | Dispute.  Further correspondence was exchanged between defendants and plaintiffs on September 4, 2009, and October 1, 2009.  Additionally, the '236 patent (the first earliest issued patent-in-suit) did not issue until March 29, 2011, the '708 patent did not issue until March 15, 2016, and the '362 patent did not issue until March 7, 2017.<br>Furthermore, this is a matter of standing and other issues of law.<br>Support:<br>Dkt. No. 1-1 at 1, 1-2 at 1, and 1-3 at 1.<br><br>A reasonable person would not conclude that failure to enforce a pending patent application signified an abandonment of a claim of infringement, because no enforcement action was ripe, and there is no claim of "infringement" based on a pending |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | patent application, and thus there is no claim to abandon. |

**Issue 3 - TO THE EXTENT THE INFRINGEMENT CLAIM IS LIMITED TO THE CHINESE TIPS, ALL BUT 40 PILE TIPS THAT COST $221 PER TIP IN 2009, ARE TIME BARRED UNDER 35 USC 286's 6-YEAR STATUTE OF LIMITATION ON DAMAGES.**

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 23. Of the 1000 EDTTEX 1 or Chinese tips made by Hammer & Steel for Foundation in 2008-2009, at $221/per pile tip, only 40 of those tips were installed on or after December 18, 2011, i.e. within the 6 years before this suit was filed.<br>35 USC 286<br>Williams Dec., ¶11. | Dispute.  Mr. Williams testified that an additional 102 tips were used in February 2012.  In  addition, there is no record for approximately 127 of the 1000 tips.<br><br>Williams Depo 217:4-218:12; Williams Dec., ¶11 |

**Issue 4 – Invalidity**

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 24. Conically shaped tips with helical flights are common in foundation construction. They were not novel in the '236 patent.<br>Supporting evidence: | Dispute.  Plaintiffs are unable to evaluate this statement as it is an opinion, not a fact.  The citations pointing to the Perko declaration are incorrect.  Furthermore, defendants do |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Patents '814, '319, '962, '372, '025, '076, and '447. Declaration of Howard Perko ¶ 5A, Ex. 2, Report; Williams Dec. ¶¶4, 5(A)-(I).  Patent 236 at Rice Declaration, Exhibit 2. | not provide any citations as to where "conically shaped tips with helical flights" exist in the cited references, and because plaintiffs cannot evaluate this statement, plaintiffs disagree. Furthermore, defendants themselves offer contradicting statements as to what is a conical or tapered shape. |
| 25. Claim 4 in the '236 patent mentions a "point shaft extending from the end plate for helping to center the pile tip during the installation of the pile. This has been known since the granting of the '814 patent in 1870 to Moseley. Supporting evidence: '814 patent. Perko Dec. ¶ 5C, Ex. 2, Report, Williams Dec. ¶¶4, 5(A)-(I). Patent 236 at Rice Declaration, Exhibit 2. | Dispute. Claim 4 states: "The screw pile substructure support system of claim 1, further comprising a point shaft extending form the end plate for helping to center the pile tip during installation of the pile." Disagree as to the rest as defendants provide no citation to show where this claim limitation exists within the Moseley reference, and because plaintiffs cannot provide an evaluation of this statement, plaintiffs disagree. What Defendants likely refer to as a point shaft is in fact a "pilot P" that "is passed down first separately from the pile, on the point of the center-pin to its correct position and there deposited. The pile is then sent down by the aid |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | of, and over the center-pin, until the orifice *o* in its lower end passes the handle or shank Q of the pilot…." D.E. 51-6 at 75.  What that means is that in *Moseley*, the "pile" is hollow, and is dropped down over the "handle or shank Q of the pilot." Support: Dkt. No. 1-1, claim 4;  D.E. 51-6 at 75. |
| 26. Claim 20 in the '236 patent mentions tapering the pile shaft from a greater to smaller diameter. This has been known for over 50 years. Supporting evidence: US Patent 6,468,003 and E. D'Appolonia, *Journal of Soil Mechanics and Foundations Division,* 1963, Vol. 89, Issue 6, pg. 57-80. Perko Dec. ¶ 5E, Ex. 5; Williams Dec. ¶¶4, 5(A)-(I).  Patent 236 at Rice Declaration, Exhibit 2. | Dispute. Defendants have not provided a copy of the D'Appolonia reference in either their invalidity contentions or as an exhibit their motion for summary judgment, and thus plaintiffs are unable to evaluate this reference.  Because it was not provided in Defendants invalidity contentions pursuant to S.P.R. 2.5.1, Defendants should not be allowed to rely on this reference. Defendants do not provide a citation as to where "tapering the pile shaft form greater to smaller diameter" is disclosed in U.S. Patent No. 6,468,003, and therefore plaintiffs disagree because plaintiffs are unable to evaluate this argument. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 27. Claims 22 and 23 of the '236 patent mention protrusions from the end/flat plate. Departing from a substantially flat plate termination by adding protrusions to a shaped pile tip is preceded by prior art . Supporting Evidence: US Patents 3,016,117, 4,623,025, 6,033,153, 6,47,445, and 7,429,148 and European Patent 0228138. Perko Dec. ¶ 5F, Ex. 2, Report; Williams Dec. ¶¶4, 5(A)-(I).  Patent 236 at Rice Declaration, Exhibit 2. | Claim 22 of the '236 patent recites: "The screw pile substructure support system of claim 19, wherein the end plate comprises at least one protrusion extending in a direction away from the shaped pile tip." Claim 23 of the '236 patent recites: "The screw pile substructure support system of claim 22, wherein a base of the at least one protrusion is disposed approximately at a center of the end plate." Disagree to the remainder of this statement as it misstates the claim language and is conclusory. Defendants cite generally to the entire patent reference and have not shown specifically where claims 22 and 23 are shown in these references, and because plaintiffs cannot evaluate this portion of the statement, plaintiffs disagree. Defendants did not provide the following references in their invalidity contentions pursuant to S.P.R. 2.5.1, and therefore, Defendants should not be allowed to rely on these references: |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | 3,016,117;<br><br>6,033,153;<br><br>6,47,445<br><br><br>Support:<br><br>Dkt. No. 1-1, claims 22 and 23. |
| 28. Claim 1 of Plaintiffs' '708 patent describes a tapered tip with helical flights. These are common in foundation construction and well-established prior art.<br>Supporting evidence:<br>US Patents 108,814; 2,234,907; 2,603,319. Perko Dec. ¶ 6A, Ex. 6, Williams Dec. ¶¶4, 5(A)-(I).  Patent 236 at Rice Declaration, Exhibit 2. | Dispute.<br>The relevant portions of claim 1 of the '708 patent recite: "a tapered portion comprising a first end having a first diameter and a second end having a second diameter, wherein the first diameter is greater than the second diameter and about equal to the diameter of the tubular pile, and wherein the first end is attached to the tubular pile; a first helical flight attached to and extending along an exterior surface of the tapered portion." Plaintiffs are unable to evaluate this statement as it is an opinion, not a fact. Defendants have not shown specifically where "a tapered tip with helical flights" is disclosed in their cited references, and therefore plaintiffs disagree because they cannot evaluate this statement. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | Dispute that what is described in Claim 1 is "common in foundation construction and well-established prior art" as this claim was issued by the U.S. Patent Office and is presumed valid, making it novel and nonobvious. Support: Dkt. No. 1-2, claim 1. |
| 29. Claims 26-28 combined with Claim 1 in the '708 patent describe a shaped pile tip. They are preceded by prior art US patents.<br><br>Supporting Evidence:<br>art US patents 3,016,117, 4,623,025, 6,033,152, 7,429,148. Perko. Dec. ¶ 6c, Ex. 8.  Patent 236 at Rice Declaration, Exhibit 2. | Dispute.<br>The statement is compound, referencing 4 different claims.  Claims 1 and 26-28 of the '708 patent do not claim "a shaped pile tip."  Defendants have not shown specifically where "a shaped pile tip" is disclosed in their cited references, and therefore plaintiffs disagree because they cannot evaluate this statement.<br><br>Further, Defendants did not provide the following references in their invalidity contentions pursuant to S.P.R. 2.5.1, and therefore, Defendants should not be allowed to rely on these references: 3,016,117;<br>Further evidentiary objection that cited `236 patent in Rice declaration does not support content of claims in `236 |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | patent. |
| 30. Claim 29 of the '708 patent covers a screw pile substructure support system. It appears to be a duplication of Claim 19 from SSI's '236 patent. The difference is the presentation order and the addition of a helix on the lower cylindrical section. Including helical elements on a shaft section below a conical transition is demonstrated in prior art US Patents 6,412,235 and 7,494,299. A similar tip is also shown in European Patent Application EP0588143 A1, STAWBAG.  Patent 236 at Rice Declaration, Exhibit 2. Supporting Evidence: US Patents 6,412,235 and 7,494,299. Perko Dec. ¶ 6d, Ex. 2 to Perko Dec | Dispute. Claim 19 of the '236 patent is not a duplication of claim 29 of the '708 patent, and there are other claim elements besides the ones defendants have listed.  Furthermore, claim 29 of the '708 patent does not claim "a lower cylindrical section," "helical elements," "shaft section," or "conical transition." Defendants have not shown specifically where "a shaped pile tip" is disclosed in their cited references, and therefore plaintiffs disagree because they cannot evaluate this statement. Further, Defendants did not provide the following references in their invalidity contentions pursuant to S.P.R. 2.5.1, and therefore, Defendants should not be allowed to rely on these references: 6,412,235; 7,494,299 |
| 31. After several rejections by the patent examiner, in order to have the patent allowed Plaintiffs had to agree to a limitation that the end plate was "an | Steve Neville submitted a response to a Final Rejection on April 14, 2009, amending claim 1 of the Application No. 11/367,768 (the '236 patent) to |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| end plate, having a substantially flat surface disposed perpendicular to the tubular pile." Supporting Evidence: Patent Claim History, November 24, 2009 rejection and December 12, 2009 Amendment, at Rice Dec., Ex's 29, 30. | include the limitation "an end plate disposed at the first end of the pile tip, the end plate having a substantially flat surface disposed perpendicular to the centerline of the tubular pile."  The `236 patent was subsequently allowed.  Support: File History of Application No. 11/367,768, lodged with the Court in accordance with S.P.R. 3.5.3. |
| A flat end plate or substantially flat end plate described in claims 1, 19, 29, 32 and 33, while the feature that as a limitation led to patent allowance, is prevalent in prior art beginning with Moseley, 1870, '814. Perko Dec., Ex. 2, Williams Dec., ¶5(F), at p. 10.  Patent 236 at Rice Declaration, Exhibit 2. | Dispute. The Court has expressly rejected the construction of end plate to mean "flat end plate" or "substantially flat end plate."  Therefore, plaintiffs disagree as to the entirety of this paragraph.  Support: Dkt. No. 43 at 9-10. |

## Issue 5 – NONE OF THE EDTTEX TIPS INFRINGE ON  the '236, '708 or 362 PATENTS

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 32. The person at Supplier Hammer & Steel, Darauis Tata, who arranged for | Although Daraius Tata believed defendants' pile tips and plaintiffs' pile |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| fabrication of both Neville's '236 pile tip and Foundation's ED1 or Chinese tip, testified that they were very different and that if he thought the ED 1 infringed, he would have declined the work.<br>Tata Depo, Tata Depo 22:2-30:17, 162:16-21, 180:7-25 and deposition exhibits 1 and 2, at Rice Dec.,¶8, and Ex. 8. | tips looked different, he admits he was not a patent attorney and did not know if it violated the patent or not.  He also admits that he did not read plaintiffs' patent.<br>Support:<br>Dkt. No. 57-4 at 5-6 (22:13-23:13); Yeh Decl., Exh. D, Tata Depo, 177:13-178:13. |
| 33. Foundation pile tip ED1 consists of a funnel shape with two blades spiraling up the surface.<br>Supporting Evidence<br>Perko Dec. ¶ 7A, Ex. 2. Williams Dec.,¶4, 6(A)-(F), and Ex.'s 10. | Defendants have admitted that the EDTTEX pile tips are conical. Defendants have also characterized the EDTTEX ED1 system pile tip as having a "funnel shape."<br><br>Support:<br>Dkt. No. 53-1 at 11:23-13:14, 22:13-23:3. |
| 34. The funnel on ED1 terminates in a conical shaped spade point.<br>Supporting Evidence:<br>Perko Dec. ¶ 7B, Ex. 2, Williams Dec.,¶4, 6(A)-(F), and Ex.'s 10. | The ED1 pile tip has an end plate at the second pile tip end, and protrusion extending from it.<br><br>Support:<br>Dkt. No. 53-1 at 24:15-23, 18:27-19:14, 15:23-16:1. |
| 35. There is a circular transition piece | Dispute. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| between the funnel and spade point that has been rounded or beveled by repeat weld passes.<br>Supporting Evidence:<br>Perko Dec. ¶ 7C, Ex. 2, Williams Dec.,¶4, 6(A)-(F), and Ex.'s 10. | Defendants do not adequately specify the portion of the ED1 that they are attempting to describe.  It is not clear if they are attempting to describe the end plate, or the cylindrical porition.  The ED1 pile tip has an end plate at the second pile tip end.<br><br>Support:<br>Dkt. No. 53-1 at 24:15-23, 18:27-19:14, 15:23-16:1. |
| 36. Foundation pile tips ED2 and ED3 consist of a tapered conical spiral of varying geometry<br>Supporting Evidence:<br>Perko Dec. ¶ 7D, Ex. 2, Williams Dec.,¶4, 6(A)-(F), and Ex.'s 10. | As an initial matter, the ED2 pile tip is not an Accused Product or Instrumentality.<br>Defendants have admitted that the EDTTEX pile tips are conical.<br>Defendants have admitted the ED3 has a conical or tapered shape.<br><br>Support:<br>Dkt. No. 53-1 at 8:22-9:13, 11:23-13:14, 22:13-23:3. |
| 37. Foundation pile tips ED2 and ED3 have interchangeable protrusions, plaintiffs' pile tip does not. A spade, a tooth, fishtail, or other protrusion can be attached to the conical nose of | As an initial matter, the ED2 pile tip is not an Accused Product or Instrumentality.<br>The ED3 has an end plate which has a protrusion extending outwardly from |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Foundation pile tips ED2 and ED3. Supporting Evidence: Perko Dec. ¶ 7E, Ex. 2, Williams Dec.,¶4, 6(A)-(F), and Ex.'s 10. | said end plate.  According to Foundation, an interchangeable protrusion is only an ED3 feature.<br><br>Support:<br>Dkt. No. 53-1 at 8:22-9:13, 13:25-14:22;<br>Dkt. No. 55-1 at 8 (47:18-48:16). |
| 38. Foundation Pile Tips ED2 and ED3 are improvements on the prior art of US Patent 4,623,025 (issued in 1986) (Fundex). Supporting Evidence: Perko Dec. ¶¶ 7D and E, Williams Dec.,¶4, 6(A)-(F), and Ex.'s 10. | As an initial matter, the ED2 pile tip is not an Accused Product or Instrumentality.<br>It is unclear how products are "improvements" on the prior art, and thus because plaintiffs cannot evaluate this statement, plaintiffs disagree. Furthermore, this calls for a conclusion of law.<br><br>Support:<br>Dkt. No. 53-1 at 8:22-9:13. |
| 39. Patent '025 featured a fixed protruding nose and a set of spiraling helical blades arranged along the surface of a frusto-conical section. Supporting evidence: Perko Dec. ¶¶ 7E. | Dispute.<br>The claims of U.S. Patent No. 4,623,025 speak for themselves (but do not contain the language that defendants use).<br><br>Support: |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | Dkt. No. 51-6 at 97-106. |
| 40. ED and ED3 improved on the '025 patent by having interchangeable nose and a stepped spiral out shape. These differences and improvements led to the issuing of US Patents 10,190,280 and 8,727,668.<br><br>Supporting Evidence:<br>Perko Dec. ¶¶ 7F; Williams Dec.,¶4, 6(A)-(F), and Ex.'s 10. | Dispute.<br>Plaintiffs have no understanding of what the "ED" product is.<br>It is unclear how products are "improvements" on the prior art, and furthermore cannot evaluate defendants' internal patent prosecution strategy.  Because plaintiffs cannot evaluate this statement, plaintiffs disagree.  Furthermore, this calls for a conclusion of law.<br><br>Agree that Defendants claim that ED3 is covered by U.S. Pat. No. 10,190,280.<br><br>Support:<br>Dkt. No. 53-1 at 8:22-9:13. |
| 41. ED 1, ED 2, and ED 3 (and ED 2 M) are all different in claims and configurations than the '236 and '708 Neville Patent pile tips so as not to infringe.<br>Perko, para's 9-11, Perko Report, Ex. 2, Williams Dec.,¶4, 6(A)-(F) 10, 11, and Ex.'s 2, Neville Depo. 116:12 - 117:5, at Rice Dec. ¶ 11, Ex. 11. | Dispute.<br>As an initial matter, the ED2 pile tip is not an Accused Product or Instrumentality.<br>This statement applies the wrong legal standards, as products cannot have "claims and configurations" and infringement is not determined by comparing infringer's products to |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | patentee's products.  Plaintiffs contend that ED1, ED2M and ED3 infringe multiple claims of the `708 and `236 patents.<br><br>Support:<br>Dkt. No. 53-1 at 8:22-9:13. |
| 42. The claims of novelty and benefit in the '236 and '708 patents that the pile and pile tip claimed for patent can accept a load of 1 million-foot pounds in representative soil is incorrect and misleading.<br>Durnal Dec., para's 3-7.; Perko, para.'s 12, 13. | Dispute.<br>The asserted "load" benefit is not claimed in any of the claims of the patents-in-suit.  Plaintiffs also disagree as defendants misstate statements from the specification.  Thus, plaintiffs disagree as to the entirety of this statement.<br><br>Support: Dkt. No. 1-1, '236 patent, 6:12-25. |

## Issue 6 – AS A MATTER OF LAW NO "LOS PROFITS DAMAGES ARE SHOWN DUE TO REPEATED LICENSE SUSPENSIONS, AND LACK OF CAUSATION

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 43. Plaintiff SSI was issued a corporation contractor's license number 877665 on May 12, 2006. This license | Substructure Support, Inc. was issued corporation contractor's license number 877665.  The license contained |

| | Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|---|
| 2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12 | contained General Engineering Classification ("A"). The qualifier for the license was Terrance Patrick Cowhey from May 12, 2006 inception of license until May 15, 2012. Supporting Evidence, Declaration of Robert B. Berrigan, ¶3d, Ex. 3; Rice Dec. ¶18, Ex. 18, License Certification; Rice Dec., ¶19, Ex. 19, Neville Depo 313:21-:7-320:6 and Depo Ex. 103. | General Engineering Classification ("A").  The original qualifying individual was Terrence Patrick Cowhey.<br><br>Support:<br>Dkt. No. 51-5 at 28. |
| 13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | 44. Terrence Patrick Cowhey was a sham RMO under California law because he did not perform any supervision and control of the Plaintiffs' construction activities, did not make technical and administrative decisions and did not check sites for proper workmanship.<br>Q. Okay. And so Mr. Cowhey didn't have an office in Substructure's office, I take it?<br>A. No.<br>Q. He didn't do work for Substructures, I take it?<br>A. Correct.<br>Q. He did not supervise jobs? | Terrence Cowhey was not a sham RMO under California law because he performed "supervisory and control activities," by managing construction activities for SSI by making technical and administrative decisions on selected jobs.<br><br>Support:<br>Dkt. No. 57-16 at 2-9 (313:21-320:24); Neville Decl., ¶ 46. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| A. Correct.<br>Q. He was basically doing sales work if he could bring in work to the company?<br>A. Initially, he was going to supervise jobs that he was going to bring in, claimed he could bring in, but it didn't ever work out that way.<br>Q. He never supervised any jobs?<br>A. He did not. I take that back. He did one, but only after he was told not to do it, and he still showed up and got hurt.<br>Neville Dep. 313:21-10-320:6, at Rice Dec., ¶ 19, Ex. 19; Berrigan Dec., ¶¶ 6 and 7, Ex. 6; Tata Depo, 108:23-109:9, at Rice Depo¶20, Ex. 20. | |
| 45. Substructure did not have a valid license from the date of issuance of May 13, 2006 until May 15, 2012 because they lacked a proper qualifier or RMO under California law.<br>Supporting Evidence:<br>California Business and Professions Code 7068.1 and California Code of Regulations, Title 16, Division 8, Article 2, section 823. Berrigan Dec. ¶¶ 3b, 6. | Dispute.<br>Terrence Cowhey was a proper RMO under California law because he performed "supervisory and control activities," by managing construction activities for SSI by making technical and administrative decisions on selected jobs.<br><br>Support:<br>Dkt. No. 57-16 at 2-9 (313:21-320:24); |

| | **Defendants' Material Fact** | **Plaintiffs' Response and Support** |
|---|---|---|
| 1 | | |
| 2 | Neville Dep. 313:21-10-320:6, at Rice | Neville Decl., ¶ 46. |
| 3 | Dec., ¶ 19, Ex. 19; Berrigan Dec., ¶¶ 6 | |
| 4 | and 7, Ex. 6; Tata Depo, 108:23-109:9, | |
| 5 | at Rice Depo¶20, Ex. 20. | |
| 6 | 46. Substructure cannot claim lost | Dispute. |
| 7 | profits on the following projects | Terrence Cowhey was not a sham |
| 8 | because they were acting as a | RMO under California law because he |
| 9 | contractor without a license in good | performed "supervisory and control |
| 10 | standing because of a lack of valid | activities," by managing construction |
| 11 | RMO: Oyster Point Project, Lake | activities for SSI by making technical |
| 12 | Merritt 10th Street Project, SFO | and administrative decisions on |
| 13 | Terminal 1 Project, SFO Terminal 2 | selected jobs. |
| 14 | Project, Bernardine Testing Project, | |
| 15 | and Bernardine Medical Project. | Support: |
| 16 | Supporting Evidence: | Dkt. No. 57-16 at 2-9 (313:21-320:24); |
| 17 | California Business and Professions | Neville Decl., ¶ 46. |
| 18 | Code 7031, et seq. Berrigan Dec. ¶¶ 8 | |
| 19 | and 12. | |
| 20 | Neville Dep. 313:21-10-320:6, at Rice | |
| 21 | Dec., ¶ 19, Ex. 19; Berrigan Dec., ¶¶ 6 | |
| 22 | and 7, Ex. 6; Tata Depo, 108:23-109:9, | |
| 23 | at Rice Depo¶20, Ex. 20: Durnal Dec., | |
| 24 | para. 12; Williams Dec., para. 9(E). | |
| 25 | 47. California Law requires that | California Business and Professions |
| 26 | contractor's maintain Worker's | Code Section 7125.2 speaks for itself. |
| 27 | Compensation Insurance to keep their | |
| 28 | license active and in good standing. | Support: |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Supporting Evidence: California Business and Professions Code Section 7125.2. Berrigan Dec. ¶¶ 3c and 9. | California Business and Professions Code Section § 7125.2. |
| 48. Neville admitted that Substructure filed for an exemption from August 30, 2011 to August 1, 2013 because Substructure was claiming that had no employees during this time period: Q. Okay. Next page on Exhibit 103, page 41 of the Bates stamped page is notice of intent to suspend license. This is August 1st, 2011, reflecting expiration of the workers' compensation insurance policy. And so do you recall receiving this notice? A. I don't recall. Q. Okay. Do you have any reason to doubt the authenticity of the license board's subpoenaed file in this matter? A. I do not. Q. Okay. And then the next page, which is on August 30, 2011, Wesley Dial - - that's his signature at the bottom next to dated August 30th, 2011. This is Bates stamp 42. Claiming exemption from workers' compensation | Dispute as to ending date. Substructure filed for an exemption from Worker's Compensation on August 30, 2011.  To the best of plaintiffs' knowledge, employees were paid by Magco Drilling, Inc. instead. Support: Dkt. No. 51-5 at 75-79 (486:19-489:16); Neville Decl., ¶¶ 55-57. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| for Substructure on account of its not having any employees. A. Yes. Q. Okay. And so was that true, that there was no employees for Substructure in August 2011? Mr. Yeh: Objection. The document speaks for itself. Q. No, it doesn't....I'm asking you if Substructure had any employees in August 2011. A. My recollection is that all of our employees were working for Magco Drilling at that time. Q. Okay. So payroll was issued by Magco. A. As I recall, yes. Q. Okay. And then when did that stop? A. Hmm. Well, it stopped officially - - or it stopped for sure sometime in March or early April of 2013. Neville Dep. p. 486:19-488:1, Depo Ex. 103, Berrigan Dec. ¶ 10, Ex. 7. Rice Dec, ¶23, Ex. 23, Neville Depo, 486:18-488:22 and Depo Ex. 103, | |
| 49. Substructures claims lost profits on several projects listed on redacted | Substructure Support, Inc. (not "Substructures") provided the contents |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Depo Ex. 50.<br>Rice Dec.,¶24, Ex. 24. | of Depo Exhibit 50.  However, this was an initial list of projects that was based on FCI-002805 provided by defendants, which indicated that "WC" tip types were only "ED2" products. Upon discovering that "WC" tip types listed on FCI-002805 also included "ED2M" and "ED3" tips, plaintiffs have since modified their list of projects.<br><br>Support:<br>Yeh Decl., Exh. M, Williams Depo, 129:12-22, 134:3-9, 138:23-139:6, Depo Exhibit 146. |
| 50. Substructure cannot claim profits for the Oyster Point or Lake Merritt 10th Street project if they had any employees because their contractor's license would be suspended as a matter of law for lacking Worker's Compensation Insurance.<br>Berrigan Dec. ¶ 12. | Dispute.<br><br>Support:<br>Neville Decl., ¶¶ 49-75. |
| 51. Steve Neville admitted that Substructure was not the lowest bidder on the Oyster Point project.<br>A. Their bid was how much? | Plaintiffs are no longer including the Oyster Point project as part of their lost profits theory, based on Defendants' representation that they used ED2 on |

| | Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|---|
| 1 | | |
| 2 | Q. $2,973,000. | this job. |
| 3 | A. Did you not earlier say it was 1 | |
| 4 | million something? | |
| 5 | Q. No. No. And so it was less than | |
| 6 | yours? | |
| 7 | A. Seems to be higher. | |
| 8 | Q. Is it? 2 million - - you're showing 2 | |
| 9 | million 977. Theirs is 2 million 973. I | |
| 10 | think it's $4,000 less? | |
| 11 | A. Yes. You're correct. | |
| 12 | Neville Depo 117:7-17. Thomson Dec. | |
| 13 | ¶ 3E, Ex. 6; Durnal Dec. ¶4A, Ex. 7. | |
| 14 | 52. The General Contractor on the | Dispute.  Hearsay.  Plaintiffs have not |
| 15 | Lake Merritt/10th Street Project stated | had the opportunity to verify the truth |
| 16 | that they were "not comfortable using | of the statements defendants assert, and |
| 17 | them (Substructure), as we had not | therefore disagree. |
| 18 | discussed the project with them | |
| 19 | previously", because SSI was not low, | |
| 20 | and only bid a small fraction of the | |
| 21 | overall pile work. | |
| 22 | Supporting Evidence. | |
| 23 | May 6, 2019 e-mail chain between Hal | |
| 24 | Stober (Gordon N. Ball Inc.) to Dermot | |
| 25 | Fallon. Durnal Dec. . ¶4B, and Durnal | |
| 26 | report, Ex. 2; Williams Dec., ¶9(F), and | |
| 27 | Report, Ex. 11. | |
| 28 | 53. Substructure withdrew from the St. | Dispute. |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| Bernardine Test Pile and Permanent project because of equipment issues whereby its equipment could not access the pile locations. Williams Dec. ¶9(B), Ex. 11; Rice Dec., ¶25, Ex. 25, Neville Depo, 192:22-193:6; Rice Dec., ¶26, Ex. 26, Neville Dep. 182:19-185:22. | Plaintiffs did not withdraw from the St. Bernardine projects.<br><br>Support:<br>Neville Decl., ¶¶ 67-70;<br>Yeh Decl., Exh. A, Neville Depo, Vol. 1, 179:1-182:15, 185:12-188:6;<br>Dkt. No. 57-23 at 2-5. |
| 54. Steve Neville admitted that it is very rare for a different contractor to be awarded a Production pile program after not getting the Test Pile program: Q. Okay. So notwithstanding - - how frequent does it happen when there's a two-sequence bid, there's a test-pile program and one contractor does it, how frequently is it that the contractor that does the production pile is a different contractor? A. It's not infrequent. Q. Because the engineers want to know that everything's the same; same pile, same equipment, same people, same methodology? A. You can say that. Neville Dep. 192:22-193:6, Rice Dec., ¶25, Ex. 25. | Dispute. Did not state "very rare." Misquotes the deposition transcript. Steve Neville states that it is "not frequent" that the contractor that does the production pile is a different contractor.<br><br>Support:<br>Dkt. No. 57-22 at 2-3 (192:22-193:6). |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 55. On the 8 projects at issue, Substructure was either not low, or non-responsive to the pile specification, or did not use the required bid form, or dropped out before the final round of bidding. Williams Dec., para. 9; Durnal Dec. para's 8-13. | Dispute.  Compound.  Plaintiffs disagree that there are 8 projects at issue.  Plaintiffs disagree as to the remainder of this statement, as defendants put forth conclusions that are speculative, assume facts not in evidence, and/or not supported by adequate facts.<br><br>Support:<br>Neville Decl., ¶ 75. |
| 56. Steve Neville admitted that Substructure did not receive the Family Justice Center project because of his strained relationship with Magco which led the prime contractor Hensel Phelps to inform Neville it was not invited to bid:<br>Q: What did he say about Foundation?<br>A. Well, ultimately that they were going to award the job to Foundation.<br>Q. Did he tell you why they were going to award the job to Foundation?<br>A. Yes.<br>Q. There were substantial complications between myself and Magco and them arising from another | Steve Neville admitted that there were substantial complications between him and Magco.<br><br>Support:<br>Dkt. No. 57-24 at 2-3 (129:3-130:7). |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| project.<br>Neville Depo p. 129:23-130:7, at Rice Dec, ¶27, Ex. 27. | |
| 57. Substructure placed their bid on the Oyster Point project on November 2, 2011.<br>Supporting Evidence:<br>Substructure bidsheet. Durnal Dec. ¶ 3B, Ex. 3. Durnal Expert Report. | Plaintiffs are no longer including the Oyster Point project as part of their lost profits theory, based on Defendants' representation that they used ED2 on this job. |
| 58. Foundation placed their bid on the Oyster Point Project on March 16, 2012.<br>Supporting Evidence:<br>Substructure bidsheet. Durnal Dec. ¶ 3B, Ex. 3. Durnal Expert Report. | Plaintiffs are no longer including the Oyster Point project as part of their lost profits theory, based on Defendants' representation that they used ED2 on this job. |
| 59. Foundation did not update their bid or participate in the bidding process as Oyster Point project progressed.<br>Supporting evidence:<br>Foundation bidsheet. Durnal Dec. ¶ 3B, Ex. 3. Durnal Expert Report. | Plaintiffs are no longer including the Oyster Point project as part of their lost profits theory, based on Defendants' representation that they used ED2 on this job. |
| 60. Substructure produced their bid for the SFO Terminal 1_CRP project on August 17, 2016.<br>Supporting evidence:<br>Supporting Evidence:<br>Substructure bidsheet. Durnal Dec. ¶ | The information that Defendants assert was obtained from confidential bid materials designated ATTORNEY EYES ONLY ("AEO").<br>The only support for this statement comes from , defendants' expert |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| 3C, Ex. 4. Durnal Expert Report. | Patrick Durnal.  Mr. Durnal was never properly disclosed in accordance with the Protective Order, and defendants' disclosure of this material to Mr. Durnal was in violation of the Protective Order.  Plaintiffs have already met and conferred on this issue, but have not yet had the opportunity to move to strike Mr. Durnal's report, and remove him as an expert, but will endeavor to do so as soon as possible. |
| 61. Foundation produced their bid for the SFO Terminal 1_CRP project on September 1, 2016.<br>Supporting Evidence:<br>Foundation bidsheet. Durnal Dec. ¶ 3C, Ex. 4. | To the best of plaintiffs' knowledge, Foundation appears to have submitted their bid for the SFO Terminal 1 project on August 30, 2016.<br><br>Support:<br>Yeh Decl., Exh. K, FCI-00540. |
| 62. Substructure failed to use Hensel Phelps bid forms when bidding on the SFO Terminal 1_CRP project.<br>Supporting Evidence:<br>Substructure bidsheet. Durnal Dec. ¶ 3C, Ex. 4. | The information that Defendants assert was obtained from confidential bid materials designated ATTORNEY EYES ONLY ("AEO").<br>The only support for this statement comes from , defendants' expert Patrick Durnal.  Mr. Durnal was never properly disclosed in accordance with the Protective Order, and defendants' |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | disclosure of this material to Mr. Durnal was in violation of the Protective Order. As noted above, Plaintiffs will be seeking relief for this improper disclosure. |
| 63. Substructure placed their bid for the SFO Terminal 2_BAD project on September 15, 2016. Supporting evidence: Substructure bidsheet. Durnal Dec. ¶ 3D, Ex. 5. | The information that Defendants assert was obtained from confidential bid materials designated ATTORNEY EYES ONLY ("AEO"). The only support for this statement comes from , defendants' expert Patrick Durnal. Mr. Durnal was never properly disclosed in accordance with the Protective Order, and defendants' disclosure of this material to Mr. Durnal was in violation of the Protective Order. As noted above, Plaintiffs will be seeking relief for this improper disclosure. |
| 64. Foundation placed their bid for the SFO Terminal 2_BAB project on October 3, 2016. Supporting evidence: Foundation bidsheet. Durnal Dec. ¶ 3D, Ex. 5. | To the best of plaintiffs' knowledge, Foundation appears to have submitted their bid for the SFO Terminal 2 project on October 3, 2016. Support: Yeh Decl., Exh. K, FCI-00542. |
| 65. Substructure bid on line items #78 | Defendants have not included the |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| and 79 for the Lake Merritt/10th Street Project.<br>Supporting evidence:<br>Substructure bidsheets, Expert Report of Patrick Durnal, Durnal Dec. ¶4B. | expert report of Durnal in this motion, and furthermore the citations provided do not state what defendants assert. Substructure Support, Inc. bid to install torque down piles.<br><br>Support:<br>Yeh Decl., Exh. L, SS-FDN-005807. |
| 66. Foundation's total for line items #78 and 70 for the Lake Merritt/10th Street project was $463,000.<br>Supporting evidence:<br>Durnal Dec. ¶4B, Ex. 8 | Defendants' total amount bid to install EDTTEX piles was $$463,448.<br><br>Support:<br>Yeh Decl., Exh. K, FCI-01323. |
| 67. Substructure claims they bid $426K on line items #78 and 79 for the Lake Merritt/10th Street Project.<br>Supporting evidence:<br>Durnal Dec. ¶4B, Ex. 8 | Defendants have not included the expert report of Durnal in this motion, and furthermore the citations provided do not state what defendants assert. Substructure Support, Inc. bid $426,370 to install torque down piles.<br><br>Support:<br>Yeh Decl., Exh. L, SS-FDN-005807. |
| 68. Foundation was on the St. Bernardine Test Pile program because of their innovative layout of piles:<br>Supporting evidence:<br>Durnal Dec. ¶4C. | Dispute.  Defendants have not included the expert report of Durnal in this motion, and furthermore the citations provided do not state what defendants assert.  Furthermore, this is a |

| Defendants' Material Fact | Plaintiffs' Response and Support |
|---|---|
| | conclusory statement of opinion, not a material fact.  As plaintiffs cannot evaluate this statement, plaintiffs disagree. |

## Plaintiffs' Additional Disputed Material Facts

| Plaintiffs' Disputed Material Fact | Supporting Evidence |
|---|---|
| 1.  Plaintiffs incorporate by reference their Proposed Statement of Uncontroverted Facts and Conclusions of Law previously lodged with the Court as D.E. 56-1. | |

Dated:  July 29, 2019                     Respectfully submitted,

KPPB LLP

By: /s/ Mark Yeh

    Joel A. Kauth
    Mark Yeh
Attorneys for Plaintiffs Steve Neville, Substructure Support, Inc., and TDP Support, Inc.