Joel A. Kauth, CA Bar No. 186544
E-mail: joel.kauth@kppb.com
Mark Yeh, CA Bar No. 307181
E-mail: mark.yeh@kppb.com
KPPB LLP
2190 S. Towne Centre Place, Suite 300
Anaheim, CA 92806
PH:   (949) 852-0000
Fax:   (949) 852-0004

Attorneys for Plaintiffs Steve Neville,
Substructure Support, Inc., and
TDP Support, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STEVE NEVILLE, SUBSTRUCTURE SUPPORT, INC., and TDP SUPPORT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FOUNDATION CONSTRUCTORS, INC. and FOUNDATION PILE, INC. <br><br> Defendants. | Case No. 5:17-cv-02507-AG (AGRx) <br><br> **NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANTS' DOCUMENT PRODUCTION** <br><br> Hon. Alicia G. Rosenberg <br><br> RONALD REAGAN FEDERAL BUILDING AND UNITED STATES COURTHOUSE 411 WEST 4TH STREET SANTA ANA, CA 92701-4516 <br><br> Date: August 26, 2019 Time: 10:00 AM Place: Telephonic Hearing |

KPPB LLP

1

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on August 26, 2019 at 10:00 AM, before the Honorable Alicia G. Rosenberg, United States Magistrate Judge, in the above-entitled Court, plaintiffs STEVE NEVILLE ("Neville"), SUBSTRUCTURE SUPPORT, INC. ("Substructure"), and TDP SUPPORT, INC. ("TDP") (collectively, "Plaintiffs") will move and hereby do move this Court to compel production of certain requested documents from defendants FOUNDATION CONSTRUCTORS, INC. ("FCI") and FOUNDATION PILE, INC. ("FPI") (collectively, "Foundation" or "Defendants").

On July 16, 2019, Plaintiffs requested a discovery conference with the Court per Judge Rosenberg's procedures on discovery motions.  On July 18, 2019, the parties submitted a Joint Report re: Discovery Conference.  Dkt. No. 49.  The parties attended a telephonic discovery conference before the Court on July 19, 2019. *Id*.  After the conference, the Court requested the parties provide additional briefing, resulting in this instant motion.  Dkt. No. 50.

Plaintiffs have requested Defendants' production of documents showing job costs reports (e.g., those documents reconciling the estimated or projected costs of a construction project with the actual costs incurred once the job is completed) and profits of construction projects where the EDTTEX piles were used.  Specifically, Plaintiffs request that the Court grant Plaintiffs' request to compel Defendant's production as to the above types of documents for the following construction projects:

1.  Lake Merritt/12th Street project (Job #110-005)

2.  San Mateo Substation project (Job #114-025)

3.  Pittsburg Substation project (Job #117-017)

4.  MV22 project (Job #214-007)

5.  Lake Merritt/10th Street project (Job #113-006)

6.  SFO ATCT project (Job #113-012)

7.  SFO Terminal 1 (Job #116-024)

8.  SFO Terminal 2 (Boarding Area D Renovation) (Job #116-027)

9.  St. Bernardine project (Test Program) (Job #215-002)

10. St. Bernardine project (Production Program) (Job #216-017)

11. 2060 Folsom project (Job #118-040)

12. Family Justice Center project (Job #113-031)

13. PG&E Eastshore (Job #111-006)

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 5, 2019, and is based upon the attached Motion to Compel, the Declaration of Mark Yeh, and the evidence and arguments of counsel as may be presented at the hearing on, or in connection with, the Court's determination of this Motion.

Dated:  July 29, 2019                    Respectfully submitted,

                                        KPPB LLP

                                        By: /s/ Mark Yeh

                                             Joel A. Kauth
                                             Mark Yeh
                                        Attorneys for Plaintiffs Steve Neville,
                                        Substructure Support, Inc., and TDP
                                        Support, Inc.

## I. **INTRODUCTION**

Plaintiffs served their Requests for Production Set One on March 16, 2018. *See* Declaration of Mark Yeh in Support of Plaintiffs' Motion to Compel ("Yeh Decl."), ¶36, Exh. AH.  On June 5, 2019, by email, Plaintiffs requested documents showing job costs reports and profit margins of construction projects where Defendants' EDTTEX piles were used.  *See Yeh Decl.* ¶3, Exh. A.  In that email, plaintiffs stated that this request fell under at least Plaintiffs' RFP Nos. 17, 19, and 21.  *Id*.  Following that email, the parties conferred via phone conference on June 7, where Defendants asked for case law support for plaintiffs' position.  Yeh Decl., ¶4.  After the meet and confer, Plaintiffs provided several Federal Circuit case law citations to Defendants on June 19, showing profitability was relevant in a *Georgia-Pacific* factor analysis for a reasonable royalty theory, as well as under a *Panduit* factor analysis for lost profits.  Yeh Decl., ¶5, Exh. B.

Plaintiffs sent Defendants another email on this issue on June 27.  Yeh Decl., ¶6, Exh. C.  Defendants requested to discuss the issue at a later time, and Plaintiffs requested further follow-up after Defendants' lack of a substantive response and in light of the upcoming discovery cut-off deadline.  *See* Yeh Decl., ¶7, Exh. D; ¶8, Exh. E.  Defendants finally provided a substantive response on July 3.  *See* Yeh Decl., ¶9, Exh. F.  Defendants appeared to generally argue that the requested information was not relevant.  *See id*.  Thus, just prior to the July 19 telephonic discovery conference, the issue before the parties was the relevancy of the information requested.  However, at the telephonic hearing with the Court, Defendants appeared to dispute—in addition to the relevancy of the information requested by Plaintiffs—that Plaintiffs alleged infringement against more than the EDTTEX pile tips, and that such an argument was new to them.  For the following reasons, Defendants' arguments as to both scope of infringement and relevancy are contradicted by the documents on record and by Federal Circuit case law.

## II.   BACKGROUND ON TECHNOLOGY AT ISSUE

This case revolves around foundation piling systems.  Piles can generally be described as long columns that provide support as part of a foundation.  *See* Dkt. No. 43 at 19 (the Court's claim construction of "pile").  Traditional piling systems are "driven" into the ground, similar to the action of a hammer and nail.  Alternative piling systems utilize other methods, and here, the alternative technology at issue "screws" piles into the ground, similar to the action of a screwdriver and screw.

The technology at issue in this case is a particular type of pile which includes a pile tip attached at the "screwing" end.  This screw pile is attached to a drilling rig, and then rotated or turned to penetrate into the ground.

## III.   ARGUMENTS

### A. Case Documents Contradict Defendants' Current Attempt to Limit the Scope of Infringement

The Complaint alleges that "Defendants have in the past and continue to make, use, offer for sale, and sell products that infringe…one or more claims of each of the '236 and '708 patents.  Such infringing products include, **without limitation,** the EDTTEX ("Equal Diameter Tube Tip-EX") Tips."  Dkt. No. 1, ¶ 23 (emphasis added).  The Complaint further alleges that "Defendants have in the past and continue to directly infringe **by practicing the methods claimed in each of the '236, '708, and '362 patents**…."  *Id.* at ¶ 24 (emphasis added).

The Complaint further alleges direct infringement of claims 1, 2, 4, 6-9, 14-20, 22-24, 27-30, 32, and 33 of the '236 patent, claims 1-6, 9-23, 25, 26, 29, 31, 32, 34-37, and 39 of the '708 patent, and claims 1, 3-5, 7-9, 11-15, 17, and 18 of the '362 patent.  *Id.* at ¶¶ 53-55.  For reference, asserted claim 33 of the '236 patent is a method claim ("A method for installing a screw pile substructure support system…"), requiring the method steps of "attaching a shaped pile tip to at least one cylindrical pile section to form a first pile unit…," "positioning the first pile

1    unit above a preselected location of ground," "attaching a drilling rig to the first

2    pile unit," and "turning the first pile unit to facilitate penetration of the ground."

3    Dkt. No. 1-1, 12:4-29. Asserted claims 31, 32 and 34-37 of the '708 patent are also

4    method claims, and the '362 patent is comprised entirely of method claims. *See*

5    Dkt. No. 1-2, 1-3. These method claims also claim more than just the pile tip. *See,*

6    *e.g.*, Dkt. No. 1-3, asserted claim 32 (claiming "a driver tool," "an adapter

7    assembly," "an adapter," "a drill rig head," and "a drill rig").

8        Even the asserted system claims of the patents-in-suit include more than the

9    pile tip. *See, e.g.*, Dkt. No. 1-1, claim 1 of the '236 patent (claiming "a tubular

10   pile" as part of the claimed screw pile substructure support system); Dkt. No. 1-2,

11   claim 11 of the '708 patent (claiming "an adapter" and "a driver tool").

12       Although Plaintiffs have modified the number of asserted claims since the

13   filing of the Complaint, the asserted claims still include both method claims and

14   systems claims that claim more than a pile tip (and also include method steps). Yeh

15   Decl., ¶ 12, Exh. I at 3. As demonstrated above, Plaintiffs have asserted from the

16   beginning of this case that the accused products include more than just the pile tip,

17   and include methods of installing the accused products as well. *See* Dkt. No. 1.

18   Thus, a plain reading of the Complaint and the patents-in-suit indicates that the

19   scope of infringement is not limited to only a pile tip. *See generally*, Dkt. Nos, 1,

20   1-1, 1-2, and 1-3.

21       Defendants' Answer also acknowledges that the accused products at issue

22   are not limited only to the pile tips. *See* Dkt. No. 1, ¶¶ 25-50; Dkt. No. 15, ¶¶ 25-

23   50. For example, Defendants admitted that their EDTTEX piles include a tubular

24   pile. Dkt. No. 1, ¶ 26; Dkt. No. 15, ¶ 26. Defendants admitted that EDTTEX piles

25   are filled with concrete and attached to a pile cap. Dkt. No. 1, ¶ 35; Dkt. No. 15, ¶

26   35. Defendants admitted EDTTEX piles are installed using a driver tool that works

27   with a drill rig. Dkt. No. 1, ¶ 36; Dkt. No. 15, ¶ 36. Defendants admitted that the

28   EDTTEX driver tool includes a bracket, a pivot, and a plate that connects to the

1   drill rig.  Dkt. No. 1, ¶ 37; Dkt. No. 15, ¶ 37.  Defendants also admitted that their
2   EDTTEX piles include attaching tubular piles to one another using welds.  Dkt.
3   No. 1, ¶ 27; Dkt. No. 15, ¶ 27.

4       Defendants also disputed the validity of each asserted method claim in their
5   initial invalidity contentions, thereby acknowledging that the patents included
6   method claims.  *See, e.g.,* Dkt. No. 23 at 7 ("The Hooking or Lofting Connector or
7   U Joint Swivel – Patent 362, Claim 14").  For example, in disputing the validity of
8   claim 14, Defendants stated that "[t]he specific claim, #14, is for **the method to**
9   **place** the pile vertical, **connect to a U joint** attached to the drill rig, then **loft the**
10  **pile** by the rig diagonally until perpendicular…."  *Id* (emphasis added).

11      Defendants also addressed the validity of method steps of the asserted
12  method claims in their final invalidity contentions, explicitly addressing the method
13  steps.  Yeh Decl., ¶ 10, Exh. G, *e.g.*, at 38 (addressing claim 31 of the '708 patent,
14  stating "…it would have been obvious to position a pile system as disclosed in Ref.
15  R above a preselected location of ground, attach a drilling rig to the pile system and
16  turn the pile to facilitate penetration of the ground in order to install a rotary pile in
17  the ground.").  In attempting to deny the validity of the asserted method claims,
18  Defendants themselves recognized that the scope of infringement of the then-
19  asserted claims were not limited to the pile tip.  *Cf. W.L. Gore & Associates, Inc.*
20  *v. Garlock, Inc.*, 842 F.2d 1275, 1279 (Fed. Cir. 1988) ("Having construed the
21  claims one way for determining their validity, it is axiomatic that the claims must
22  be construed in the same way for infringement.").  Thus, it is difficult to imagine
23  how Defendants assert that the scope of infringement is limited only to the
24  EDTTEX pile tips.

25      **B. The Scope of Infringement Has Remained Consistent**

26      Plaintiffs have been unambiguous in their initial and final infringement
27  contentions that the scope of infringement was not limited to the EDTTEX pile tip
28  itself.  Yeh Decl., ¶ 11, Exh. H at 3 ("Defendants make, use, offer for sale, and sell

the Equal Diameter Tubex Tip-EX product ('EDTTEX System') in violation of 35 U.S.C. § 271(a). Defendants also practice the asserted claims to install the EDTTEX System in violation of 35 U.S.C. § 271(a)."); ¶ 12, Exh. I (asserting the same product and method causes of action, and adding that "the EDTTEX System includes at least the pile tip models known as the 'ED1,' 'ED2M,' and 'ED3' pile tips.").

It is (and has always been) Plaintiffs' position that the "Accused Products" (insofar as physical things) are the EDTTEX piles (sometimes previously referred to as the "EDTTEX System") which includes at least the pile and the pile tip, and the hardware to install the EDTTEX System. *See, e.g,*. Yeh Decl., Exh. H at 3-4 (Plaintiffs' Initial Infringement Contentions); Exh. I at 3-4 (Plaintiffs' Final Infringement Contentions). Additionally, it is (and has always been) Plaintiffs' position that Foundation practices asserted method claims to install the EDTTEX piles. *See, e.g.*, Yeh Decl., Exh. H at 3 (Plaintiffs' Initial Infringement Contentions); Exh. I at 3 (Plaintiffs' Final Infringement Contentions). To the extent that Plaintiffs do not include methods under the terms "Accused Products" or "Accused Instrumentalities," it is unclear whether methods would constitute "products" or "instrumentalities," and instead plaintiffs elect to simply state infringement of the asserted method claims by Foundation's EDTTEX piles under the relevant statute. *See, e.g,*. Yeh Decl., Exh. H at 3 (Plaintiffs' Initial Infringement Contentions); Exh. I at 3 (Plaintiffs' Final Infringement Contentions).

**C. The Plain Language of the Asserted Claims Ties Directly to the Scope of Work of the Construction Projects Where the EDTTEX Piles are Installed**

To the extent that Defendants do not dispute that the scope of infringement is not limited to the EDTTEX pile tips, it is even more difficult to imagine why Defendants dispute the connection to the construction projects where the EDTTEX piles have been installed. *Cf. Phillips v. AWH Corp.*, 415 F.3d 1303 1312 (Fed.

1    Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of a patent
2    define the invention to which the patentee is entitled the right to exclude.'")
3    (citations omitted).  Exemplary asserted method claim 31 of the '708 patent, for
4    example, requires method steps of "attaching a pile tip to a tubular pile… to form
5    a screw pile," "positioning the screw pile above a preselected location of ground,"
6    "attaching a drilling rig to the first pile unit," and "turning the first pile unit to
7    facilitate penetration of the ground."  Dkt. No. 1-2, claim 31.

8         These method steps constitute the scope of work that is bid by subcontractors
9    (e.g., Defendants) where the EDTTEX piles are installed, i.e., "a method of
10   installing a screw pile substructure support system."  Dkt. No. 1-2, '708 patent,
11   claim 31.  In one exemplary job proposal that Foundation has produced, the work
12   that Foundation bids is the installation of EDTTEX piles.  *See, e.g.*, Yeh Decl., ¶
13   15, Exh. L, FCI-02780 through FCI-02782 (showing Foundation's Piling Proposal
14   to general contractor James E. Roberts-Obayashi Corp. for the 2060 Folsom project
15   for "**Installation of 339 each of 12.75" EDTTEX** between 75'-100' long totaling
16   30,500 LF for the lump sum price of $3,470,000.00.") (emphasis added).  This
17   exemplary proposal also implicitly acknowledges that performing these method
18   steps necessarily includes things other than the EDTTEX piles, such that
19   Foundation includes in its proposal "…**to furnish all labor, materials, and
20   equipment for the following**."  *Id*. (emphasis in original).  In fact, the scope of
21   work for nearly all of the construction projects for which Plaintiffs have requested
22   job costs reports and profit margin information is for the installation of EDTTEX
23   piles.  *See* Yeh Decl., ¶¶ 16-23, 26, Exh.'s M through T, and W (purportedly
24   showing Foundation's proposals for the installation of EDTTEX piles or contracts
25   for installation of EDTTEX piles at the SFO Terminal 1 project, the SFO Terminal
26   2 (Boarding Area D Renovation) project, the Lake Merritt 10th Street project, the
27   SFO ATCT project, the St. Bernardine project, the Family Justice Center project,
28   Lake Merritt 12th Street project, and MV22 project).

Moreover, Plaintiffs are not aware of any arguments from Defendants that they do not perform these method steps at these construction projects to install the EDTTEX piles. Defendants have testified that they attach a drill rig to a screw pile (Yeh Decl., ¶ 13, Exh. J, Deposition of Byrl Williams ("Williams Depo"), 160:15-162:17 (and Exhibit 153); 191:17-194:17 (and Exhibit 165)), that Foundation rotates the screw pile to facilitate penetration into the ground (*Id*. at 161:23-162:17 (and Exhibit 153)); and that Foundation attaches an EDTTEX pile tip to a tubular pile (*Id*. at 160:15-164:16 (and Exhibit 153)). *See also, generally*, Yeh Decl., ¶ 14, Exh. K (showing positioning of screw pile above a preselected location of ground). Thus, Plaintiffs cannot imagine a reason why Defendants assert that job costs reports and profitability information from such construction projects have no connection to the EDTTEX piles when the scope of Foundation's work bid for the contract for that construction project is to install said EDTTEX piles.

**D. Profitability of Construction Jobs Where the EDTTEX Piles were Installed Are Relevant within the Scope of Discovery**

In refusing to produce the requested documents, Defendants asserted that Plaintiffs did not meet "several gatekeeper thresholds on lost profits," appearing to reference Federal Circuit cases provided by Plaintiffs. Yeh Decl., ¶ 24, Exh. U. In support of this assertion, Defendants appeared to cite to the *Panduit* factors used in a lost profits analysis, referencing factors such as "using the alleged infringer's profits," "considering the 'whole product' unapportioned from the claimed infringing part," and "a showing that it is the patented invention that is driving the market demand." *Id*. However, in the context of this motion to compel discovery, Defendants are incorrect that these are "gatekeeper thresholds." *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

The Appeals Court for the Sixth Circuit expressly stated that "[t]o obtain as damages the profits on sales he would have made absent the infringement, i.e., the sales made by the infringer, a patent owner must **prove**: (1) demand for the patented

product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." *Id.* (citations omitted) (emphasis added).  In this motion to compel Foundation's production of documents, plaintiffs are not required to prove their damages case.  The issue for this dispute, insofar as Plaintiffs can understand Defendants' argument, is the relevancy of documents.  *See generally*, Yeh Decl., ¶¶ 24-25, Exh. U, Exh. V.  Rule 26 states that the "[p]arties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense…."  Rule 26 of the Fed. R. of Civ. P. (emphasis added).  The test for relevant evidence states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable that it would be without evidence; and (b) the fact is of consequence in determining the action.  Rule 401 of Fed. R. of Evid. Documents showing job costs reports and profitability for the construction projects where the EDTTEX piles were installed are relevant to Plaintiffs' claim for lost profits because such requested information has a tendency to make Plaintiffs' damages theory more or less probable that it would be without the evidence, and Plaintiffs' damages theory is a fact of consequence in the case.  *See id.*

Defendants also appear to advance this same flawed argument with respect to Plaintiffs' damages theory under a reasonable royalty theory.  *See* Yeh Decl., ¶ 25, Exh. V.  Defendants requested that Plaintiffs "tie a job profit, and a job bid, and an owner demand for a job, and the component part and 'but for' tests you must meet under Lucent and the other cases." *Id.*  To the extent that Plaintiffs understand Defendants, this argument appears to be asking Plaintiffs to prove certain *Georgia-Pacific* factors.  *See id.*  However, the Georgia-Pacific Court expressly stated that "**[a] comprehensive list of evidentiary facts relevant, in general, to the determination of the amount of reasonable royalty for a patent license** may be drawn from a conspectus of the leading cases.  The following are some of the factors mutatis mutandis seemingly more pertinent to the issue here: [listing of

PLAINTIFFS' MOTION TO COMPEL   8

*Georgia-Pacific* factors omitted].” *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  In other words, evidence that falls within the Georgia-Pacific factors is relevant evidence to be considered for a reasonable royalty theory.  *See id*; *see also* listing of relevant Georgia-Pacific factors, *infra*.  Thus, Defendants’ assertion that the *Georgia-Pacific* or *Panduit* factors are “thresholds” with respect to relevance is incorrect – the *Georgia-Pacific* or *Panduit* factors are thresholds with respect to determining a patentee’s damages amount or, more generally, proving the patentee’s damages theory.  *See generally, Georgia-Pacific Corp*., 318 F. Supp. 1116; *Panduit Corp.*, 575 F.2d 1152.

**E. The Federal Circuit and other Courts have Considered Such Requested Information Relevant**

The minimum floor for damages in a patent infringement case is a reasonable royalty.  35 U.S.C. § 284.  A reasonable royalty “must be based on the incremental value that the patented invention adds to the end product.”  *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Group, LLC*, 879 F.3d 1332, 1348 (Fed. Cir. Dec. 2018) (citing *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)).  In determining that incremental value, the Federal Circuit has held that in the case of a reasonable royalty analysis, apportionment can be addressed “by careful selection of the royalty base to reflect the value added by the patented feature [or] … by adjustment of the royalty rate so as to discount the value of a product’s non-patented features; or by a combination thereof.”  *Id*.  Such apportionment can be performed by evaluating the *Georgia-Pacific* factors.  *See id*. at 1348-49; *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).  Of course, for these cases to discuss apportionment of profits, the profit data was already produced.  Defendants have not provided a case where such data was properly withheld.

As applied to this case, plaintiffs are pursuing a reasonable royalty theory that the construction projects where the Accused Products are installed is the

appropriate royalty base to reflect the value added by the patented features. *See Exmark*, 879 F.3d at 1348 ("using the accused lawn mower sales as the royalty base is particularly appropriate in this case because the asserted claim is, in fact, directed to the lawn mower as a whole."); *see also*, III(C), *supra*. The profitability and revenue of these construction projects is relevant and germane to such an analysis, as seen, for example, in the following *Georgia-Pacific* factors:

- Factor 10 ("The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.")

- Factor 11 ("The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use");

- Factor 12 ("The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions"); and

- Factor 13 ("The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements; the manufacturing process, business risks, or significant features or improvements added by the infringer").

*Georgia-Pacific Corp*., 318 F. Supp. at 1120. As profitability (and implicitly, revenue) are expressly considered in the *Georgia-Pacific* factors, documents sufficient to show such profitability and revenue are *prima facie* relevant to the case. *See id*.

Moreover, the Federal Circuit implicitly acknowledged that the infringer's profit margins are relevant when it held that "an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. May 2013) ("an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped. [citations omitted]. The infringer's selling price can be raised if necessary to accommodate

1    a higher royalty rate, and indeed requiring the infringer to do so may be the only

2    way to adequately compensate the patentee for the use of its technology."). The

3    *Douglas Dynamics* Court still took the infringer's profits into consideration when

4    it concluded that "**the portion of the profit** that can be credited to the infringing

5    use of the date-picker tool is exceedingly small." *Id*. at 1333 (emphasis added).

6        The Federal Circuit has even extended this analysis to post-hypothetical

7    negotiation-date use of the infringing products. *See Lucent Techs., Inc. v. Gateway,*

8    *Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. Sept. 2009) ("we observed that the

9    hypothetical negotiation analysis 'permits and often requires a court to look to

10   events and facts that occurred thereafter and that could not have been known to or

11   predicted by the hypothesized negotiators"). The Lucent Court further explained

12   that "[c]onsideration of evidence of usage after infringement started can, under

13   appropriate circumstances, be helpful to the jury and the court in assessing whether

14   a royalty is reasonable." *Id*. at 1333-34. Such "quantitative information, assuming

15   it meets admissibility requirements, ought to be given its proper weight, as

16   determined by the circumstances of each case." *Id*. Thus, Foundation's documents

17   showing job costs reports and profit margins of the construction projects where the

18   EDTTEX piles were used and installed, even those taking place after the date of

19   the hypothetical negotiation, are relevant to Plaintiffs' reasonable royalty damages

20   theory.

21       The Federal Circuit has also held that profits are relevant to the amount of

22   the patentee's damages under a lost profits theory. *Kori Corp. v. Wilco Marsh*

23   *Buggies and Draglines, Inc.*, 761 F.2d 649, 655 (Fed. Cir. May 1985) ("**evidence**

24   **of an infringer's profits may be relevant to the amount of patentee's damages**

25   **in certain circumstances.** Here, where the patentee can establish that he would

26   have made the sales of the patented products, but for the fact that the infringer made

27   them, the infringer's profits were properly looked at for comparison purposes with

28   the patentee's proof of his lost profits.") (emphasis added). The *Kori* Court further

explained that while the patentee's lost profits are generally the measure of damages, "under proper circumstances, an infringer's profits may be considered in establishing a patent holder's general damages." *Id*. In concluding that plaintiff was not *per se* entitled to the infringer's profits, the Federal Circuit nonetheless held that "the district court did not err in this case in using [defendant's] profits to estimate [plaintiff's] lost profits." *Id*.

Defendants generally argue that Plaintiffs cannot meet the "but for" requirement. *See generally*, Yeh Decl., Exh. U, Exh. V. However, as discussed above, profits are expressly considered in the *Panduit* four-factor test and are used to prove the patentee's lost profits damages theory, and thus are implicitly relevant evidence. *See Panduit Corp.* 575 F.2d 1152. Whether Plaintiffs can prove the "but for" requirement is for a later point in the case (and Plaintiffs disagree with Defendants arguments in any event). *See* III(D), *supra*.

**F. Other Considerations**

Defendants have previously argued that producing the requested documents would be "an expense." Yeh Decl., Exh. V at 3. However, Defendants have already produced the projected profits for nearly all of the construction projects requested. *See* Yeh Decl., Exh. T, FCI-002898 (purporting to show estimated profit labeled as "MARK UP" for the Lake Merritt 12th Street project); Exh. S, FCI-002841 (purporting to show estimated profit labeled as "MARK UP" for the Family Justice Center project); Exh. X, FCI-02288-02289 (purporting to show estimated profit labeled as "MARK UP" for the MV22 project), Exh. Y, FCI-02964 (purporting to show estimated profit labeled as "MARK UP" for the Lake Merritt 10th Street project); Exh. Z, FCI-01633 (purporting to show estimated profit labeled as "MARK UP" for the SFO ATCT project); Exh. AA, FCI-02039 (purporting to show estimated profit labeled as "MARK UP" for the SFO Terminal 1 project); Exh. AB, FCI-02771 through FCI-02774 (purporting to show estimated profit labeled as "MARK UP" for the St. Bernardine (Production Program) project;

1   Exh. AC, FCI-02783 through FCI-02793 (purporting to show estimated profit
2   labeled as "MARK UP" for the 2060 Folsom project.  Thus, Plaintiffs do not
3   believe that production of documents showing job costs reports and actual profits
4   of these construction projects is an undue burden or not proportional to the case
5   considering Defendants' already-produced estimated profits.

6       To the extent that Defendants assert that the discovery cut-off has already
7   passed, and that it is too late in the case for additional document production, the
8   Court's Scheduling Order Specifying Procedures allows discovery motions to be
9   brought no later than 30 days after the discovery cut-off deadline.  Scheduling
10  Order   Specifying   Procedures,   Section   1.3   (available   at
11  https://www.cacd.uscourts.gov/sites/default/files/documents/AG/AD/Scheduling
12  %20Order%20Specifying%20Procedures.pdf).

13      Moreover, Plaintiffs served the relevant Requests for Production on March
14  16, 2018, and Defendants served their responses on May 29, 2018.  Yeh Decl., ¶¶
15  29-30, Exhs. AD, AE.  Defendants also had notice that Plaintiffs were requesting
16  such information when Plaintiffs served their notice for their Rule 30(b)(6)
17  deposition to defendant Foundation Constructors, Inc. on March 29, 2019.  Yeh
18  Decl., ¶ 34, Exh. AF at 3 (Topic 18 – "Defendant's finances for each year from
19  2011 to present.  This includes, but is not limited to, Defendant's annual revenue,
20  operating costs, and profits and losses).  Defendants objected to Topic 18 the
21  morning of the deposition and did not provide a witness who had knowledge of that
22  topic.  Yeh Decl., ¶ 34, Exh. AG.  Defendants have denied Plaintiffs' requests for
23  such information and have been the cause of this dispute since at least April of this
24  year, and thus cannot claim that production of the requested documents is too late.

25  **IV.   CONCLUSION**

26      In meet and confers with defendants, defendants appear to argue generally
27  that the profit margins and job costs reports of the construction projects where the
28  Accused Products were used are not relevant to the case because Plaintiffs cannot

1    prevail on their theory of damages.  Plaintiffs cannot discern that defendants have
2    provided any legal support for this assertion, except that defendants assert that the
3    profit margins and job costs reports of the pile tips only is the proper starting point
4    for any damages theory – an assertion that plaintiffs contest with the case law cited
5    above.   However, whether plaintiffs or defendants ultimately prevail on their
6    respective damages theories is not at issue here – the issue at hand is whether such
7    information requested is relevant such that it falls within the scope of discovery.
8    The *Georgia-Pacific* factors and *Panduit* factors expressly consider profitability
9    information as cited above.  The plain language of the asserted claims directly
10   mirrors the scope of work of the construction projects where the EDTTEX piles are
11   installed.  Therefore, this information has a tendency to make plaintiffs' damage
12   theory more or less probable than it would be without the evidence, and is of
13   consequence in determining the action.

14           Whether the value of the construction project or the value of the pile tips
15   alone is the correct royalty base to be used in a *Georgia-Pacific* factor evaluation
16   and whether plaintiffs can satisfy the *Panduit* factor test is a matter for the parties
17   to prove later at trial.  It cannot be the case that plaintiffs prevail on their argument
18   that the correct royalty base is the value of the construction project, only to be
19   unable to prove the remainder of their reasonable royalty theory under a *Georgia-*
20   *Pacific* factor analysis because the evidence needed to perform such an analysis
21   was previously deemed not relevant to the case.  The same is true of Plaintiffs' lost
22   profits theory under a *Panduit* factor analysis.  It cannot also be the case that
23   Defendants are the arbiters of making such a determination of relevancy based
24   solely on Defendants' belief that Plaintiffs will not prevail on their damages theory.

25           Based on the foregoing, Plaintiffs request that the Court compel production
26   of Foundation's documents showing job costs reports and profits of construction
27   projects where the EDTTEX piles were used and installed.

28   Dated:  July 29, 2019                              Respectfully submitted,

1   KPPB LLP

2   By: /s/ Mark Yeh

3       Joel A. Kauth
        Mark Yeh
4   Attorneys for Plaintiffs Steve Neville,
5   Substructure Support, Inc., and TDP
    Support, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the following documents has been served upon all counsel of record on July 29, 2019, via the Court's ECF Filing System:

- Plaintiffs' Notice of Motion and Motion to Compel Defendants' Document Production
- Declaration of Mark Yeh in Support of Plaintiffs' Motion to Compel Defendants' Document Production
- Proposed Order Granting Plaintiffs' Motion to Compel

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 29, 2019, at Anaheim, California.


By: /s/ Mark Yeh

Mark Yeh